# 2017 Restatement of the Trust Agreement of the Plumbers' Welfare Fund, Local 130, U.A.

**Table of Contents**

ARTICLE I NAME OF TRUST ........................................................ 4
ARTICLE II DEFINITION OF TERMS ........................................................ 4
ARTICLE III PURPOSE OF TRUST AND APPLICATION OF FUNDS ........................ 6
ARTICLE IV ELIGIBILITY FOR PARTICIPATION IN THE HEALTH AND WELFARE PLAN ........................................................ 7
ARTICLE V OBLIGATIONS OF CONTRIBUTING CONTRACTORS ........................ 8
ARTICLE VI RIGHTS OF PARTICIPANT ........................................................ 9
ARTICLE VII TRUSTEES AND SUCCESSOR TRUSTEES ........................................ 10
ARTICLE VIII POWERS AND DUTIES OF TRUSTEES ........................................ 11
ARTICLE IX PROVISIONS RELATING TO INSURANCE COMPANIES AND GROUP INSURANCE CONTRACTS ........................................................ 17
ARTICLE X CONTROVERSIES AND DISPUTES ........................................................ 18
ARTICLE XI AMENDMENT AND TERMINATION ........................................................ 18
ARTICLE XII SPENDTHRIFT CLAUSE ........................................................ 19
ARTICLE XIII MISCELLANEOUS ........................................................ 20

**2017 Restatement of the Trust Agreement of the Plumbers' Welfare Fund, Local 130, U.A.**

WHEREAS, through collective bargaining, the Chicago Journeymen Plumbers' Association, Local Union No. 130, of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, the Plumbing Contractors Association of Chicago and Cook County, and the West Suburban Plumbing Contractors Association have determined that in order to provide benefits to employees in conformity with applicable law, it is appropriate to restate the trust for the Plumbers' Welfare Fund, Local 130, U.A. which provides benefits for persons who are current employees and eligible for the Health and Welfare Plan;

WHEREAS, the undersigned are Trustees of the Plumbers' Welfare Fund, Local 130, U.A., created by a Trust Agreement ("Agreement") originally dated October 3, 1950, which has been amended from time to time;

WHEREAS, under Section 11.01 of the Trust Agreement, the undersigned are authorized to amend the Trust;

WHEREAS, the Trustees wish to now restate the Trust of the Plumbers' Welfare Fund, Local 130, U.A., effective January 1, 2017;

NOW, THEREFORE, the Trust of the Plumbers' Welfare Fund, Local 130, U.A. is amended and restated to read as follows:

## ARTICLE I
## NAME OF TRUST

The Agreement created the Trust known as the PLUMBERS' WELFARE FUND, LOCAL 130, U.A. TRUST (sometimes hereinafter referred to as the "Trust" or "Trust Agreement").

## ARTICLE II
## DEFINITION OF TERMS

The following definitions control for purposes of this Trust Agreement:

2.1 The term "Affiliated Employer" means the Chicago Journeyman Plumbers' Union, Local 130, U.A., the Plumbers' Pension Fund, Local 130, U.A., the Plumbers' Welfare Fund, Local 130, U.A., the Apprentice and Journeymen Education and Training Trust Fund, Local 130, U.A., the Kankakee & Iroquois Counties Plumbing & Piping Contractors Association, the West Suburban Association of Plumbing Contractors, and the Plumbing Contractors' Association of Chicago and Cook County. An entity will not be an Affiliated Employer unless it executes a participation agreement with the Trust that is approved by the Trustees or is otherwise approved by the Trustees to participate as an Affiliated Employer.

2.2 "Contractor" means those individuals, corporations, partnerships, limited liability companies, firms, or associations who are regarded as Contractors and are legitimately so engaged under the customs and usage of the trade, except that the Union is regarded as a Contractor for the purpose of determining the eligibility for participation in this Trust of its full-time employees who are members of the Union, and any other employer employing employees within a bargaining unit represented by the Union is regarded as a Contractor, for the sole purpose of this Trust, if the employer files an application with the Trustees and the application is approved by the Trustees. The Trustees have the unqualified right to reject the application for participation of any employer who is not a Contractor under the customs and usage of the trade, and their decision on any employer application is final and binding.

2.3 The term "Contractors' Associations" shall refer to the Plumbing Contractors' Association of Chicago and Cook County, and the West Suburban Association of Plumbing Contractors.

24 "Covered Employment," "Work in Covered Employment," "Employment in the Craft," and "Employed in the Craft" mean the employment of an employee within a bargaining unit represented by the Union, or within a bargaining unit represented by the Technical Engineering Division, Local 130, U.A., AFL-CIO, and on account of such employment the employer is required to make contributions to this Trust. The terms "Covered Employment," "Work in Covered Employment," "Employment in the Craft," and "Employed in the Craft" include full-time employment of a member of the Union as an employee of the Union.

2.5 "ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

2.6 The "Fiscal Year" of the Trust, and the Health and Welfare Plan, means the period beginning on the first day in June in each year and ending on the thirty-first day of the following May. The records of the Health and Welfare Plan and the Trust established by the Trust Agreement will be kept on the basis of the Fiscal Year.

2.7 "Health and Welfare Plan" or "Plan" means the Health and Welfare Plan of the Plumbers' Welfare Fund, Local 130, U.A., and refers specifically to any Group Insurance Contract or Contracts acquired by the Trustees under the terms of this Trust Agreement. If any Group Insurance Contract or Contracts differ from the Health and Welfare Plan, including as set forth in the Health and Welfare Plan is considered amended to conform to any Group Insurance Contract or Contracts.

2.8 "Group Insurance Contract" means any Group Insurance Contract issued to the Trustees by an insurance company and is a contract or agreement obtained by the Trustees under which a corporation, authorized by the Trustees, pays for specified health, medical, vision, life, or dental services provided to a Participant or a dependent of a Participant in return for a premium paid by the Trustees.

2.9 "Insurance Company" means any insurance company that, upon application of the Trustees has issued one or more Group Insurance Contracts for the Trust, the Health and Welfare Plan and is a corporation authorized to issue a Group Insurance Contract whether or not incorporated as an insurance company under state law, and expressly includes contracts entered into with corporations organized under the following acts of the State of Illinois; the Dental Service Plan Act and the Vision Service Plan Act.

2.10 "Members" means Members of the Union. An individual who becomes or is a Member of the Union retains that status until he is expelled or withdraws from the Union. A suspension of membership for non-payment of dues does not terminate membership for the purpose of this Trust.

2.11 A "Non-Bargaining Unit Employee" is any employee of a Contributing Contractor (as set forth in the participation agreement) who is not an apprentice or journeyman plumber, or serviceman included within a bargaining unit represented by the Union or a member of any other labor organization providing pension and welfare benefits to its members.

2.12 A "Participant" is an employee, or former employee, of a Contributing Contractor, an employee of an Affiliated Employer, or a Non-Bargaining Unit Employee who is eligible to participate under Article IV of this Trust in the Health and Welfare Plan.

2.13 The term "Contractors' Associations" shall refer to the Plumbing Contractors' Association of Chicago and Cook County, and the West Suburban Association of Plumbing Contractors.

2.14 "Trustees" means the originally named Trustees, their successors who are duly appointed under this Trust Agreement, and the Alternate Trustees when authorized to act by a Trustee in the manner prescribed by Article VIII of this Trust. The Trustees in their collective capacity are known as the "TRUSTEES OF THE PLUMBERS' WELFARE FUND, LOCAL 130, U.A." and will conduct the business of the Trust and execute all instruments in that name. The Trustees are designated as the administrator, plan administrator, and named fiduciary of the Plan for the purpose of ERISA.

2.15 "Trust Fund" or "General Trust Fund" means all property and assets of the Trust including any Group Insurance Contracts purchased by the Trustees for the benefit of Participants.

2.16 "Union" means the CHICAGO JOURNEYMEN PLUMBERS' ASSOCIATION, LOCAL UNION NO. 130, OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA, or in the case of a dissolution or disaffiliation of the Union, any successor to the Union. Where appropriate, it shall also refer to any other labor organization which has consolidated with, or merged with the Union.

## ARTICLE III
## PURPOSE OF TRUST AND APPLICATION OF FUNDS

3.1 Purpose of Trust. The primary purpose of the Trust is to provide the health and welfare benefits set forth in the Health and Welfare Plan. The general purpose of the Trust is to provide, in accordance with amendments to the Health and Welfare Plan and Trust adopted from time to time by the Trustees, any additional benefits permitted by law as, in the opinion of the Trustees, the Trust may permit.

3.2 Application of Funds. The Trustees shall use and apply the General Trust Funds to carry out the purpose of the Trust as follows:

(a) To pay and provide for payment of all the reasonable and necessary expenses of collecting contributions from Contractors and administering the affairs of the Trust.

(b) To pay or provide for the payment of the benefits set forth in the Health and Welfare Plan, and any other plan of benefits established by the Trustees, or the premiums on any Group Insurance Contract or Contracts issued to the Trustees for the purpose of providing benefits.

(c) To establish and accumulate reasonable reserves that the Trustees, in their sole discretion, determine necessary or desirable for the performance of the purposes of the Trust and to provide additional benefits.

(d) To pay or provide for the payment of any additional benefits that the Trustees may, from time to time, provide by amendment to the Trust, the Health and Welfare Plan and any other plan of benefits established by the Trustees.

(e) To act in a settlor capacity to allocate General Trust Funds, including assets, contributions, payments and reserves, as they deem between and among the Health and Welfare Plan and any other plan of benefits established by the Trustees.

3.3 Limitation of Use of Funds. The Trust Fund and all Trust income must be set aside and used solely for the purpose of providing those benefits established by the Health and Welfare Plan and any other plan of benefits established by the Trustees in the manner described in Section 501(c)(9) of the Internal Revenue Code and for the payment of reasonable costs of administration directly connected with the Trust purpose.

3.4 Contributions to the Welfare Fund. Contributions to the Welfare Fund shall be in such amounts as may be established from time to time by the applicable Collective Bargaining Agreement or participation agreement with the Union or the Welfare Fund. In the event the payroll records of any Contributing Contractor show that any employee on whose behalf the Contributing Contractor is required to make contributions to the Welfare Fund is paid by salary or any method other than hourly wages, then the employee shall be presumed to have worked for a minimum of forty (40) hours or, the number of hours set forth in the Collective Bargaining Agreement or participation agreement, in Covered Employment during each week of such employment and contributions shall be made for all such hours. In the event that the Collective Bargaining Agreement differs from this Trust, the minimum hours to be reported each week shall be governed by the Collective Bargaining Agreement or applicable participation agreement. Each Contributing Contractor making contributions to the Fund shall make such contributions by check, draft, money order, or other form of payment acceptable to the Trustees delivered to the Trustees or a party designated by them.

## ARTICLE IV
## ELIGIBILITY FOR PARTICIPATION IN THE HEALTH AND WELFARE PLAN

4.1 The terms governing eligibility for Participation in the Health and Welfare Plan are set forth in the Health and Welfare Plan and any subsequent amendment approved by the Board of Trustees and those documents shall determine any issue regarding Eligibility for Participation in the Health and Welfare Plan.

## ARTICLE V
## OBLIGATIONS OF CONTRIBUTING CONTRACTORS

5.1 Any Contractor contributing to this Trust under the terms of an agreement with the Union or participation agreement with the Welfare Fund, providing for contributions is a Contributing Contractor for the period of time for which contributions are being made. Any Contractor contributing to this Trust pursuant to the terms of an agreement with the Technical Engineering Division, Local 130, U.A., AFL-CIO, providing for contributions to the Welfare Fund – Technical Engineering Division, Local 130, U.A. AFL-CIO, or to this Trust is a Contributing Contractor for the period of time for which contributions are being made. An Affiliated Employer is a Contributing Contractor during the period of time it contributes to this Trust in the same manner as other Contributing Contractors.

5.2 Each Contractor shall contribute to the Welfare Fund on behalf of eligible Employees in accordance with the applicable collective bargaining agreement or participation agreement. Contractors shall remit payment on a monthly basis pursuant to the instructions provided to each Contractor; contributions for each month shall be sent by the deadline established in the applicable collective bargaining agreements, or if no such deadline is established, under rules promulgated by the Trustees. Contractors subject to a weekly payment arrangement shall remit payments weekly.

5.3 Any Contractor who fails to make contributions under paragraph 5.2 of this Article in the correct amount, and in a timely manner, shall be charged liquidated damages equal to a percentage set by the Trustees of the unpaid or late contributions. In addition thereto, such Contractor may be charged interest for each month (or week) during which such contributions remain unpaid. The Contractor shall also be charged for any reasonable attorney's fees and costs incurred by the Welfare Fund in collecting unpaid contributions. The Trustees shall have the authority to waive any liquidated damages, interest, attorney's fees and/or costs.

5.4 Each Contractor shall, when so required by the Trustees, furnish such information and reports as may be necessary to the proper performance of their duties. In addition, the Trustees shall have the right -- at reasonable times during business hours and upon advance notice -- to have a certified public accounting firm enter upon the premises of any Contractor and to examine such books, records, papers and reports of the Contractor as may be necessary in determining the number and names of Employees for whom contributions should be made to the Welfare Fund; the number of hours worked by any/all Employees for whom contributions should be made; and any other information necessary (including but not limited to cash disbursement journals) to the Trustees in performing their duties in accordance with the provisions of this Agreement.

5.5 In the event that the Trustees utilize legal counsel to aid them in securing compliance by any Contractor with the provisions of this Article, such Contractor shall be

liable for all costs incurred, including, but not limited to, reasonable attorneys' fees. In the event an examination discloses that any Contractor during the period of the audit, has underpaid contributions, the Contractor shall also be liable for the costs for the examination. The Trustees shall have the authority, however, to waive all or part of such costs as well as interest and/or liquidated damages.

## ARTICLE VI
## RIGHTS OF PARTICIPANT

6.1 Plan Benefits. Each Participant, and eligible dependent is entitled to the benefits provided by the Health and Welfare Plan, subject to the limitations set forth in this Trust and the Health and Welfare Plan. No Participant, or any other person shall be entitled to receive benefits under both the Health and Welfare Plan and the Retiree Plan.

6.2 Limitation of Benefits. If the Trustees acquire a Group Insurance Contract or Contracts to provide the benefits set forth in the Health and Welfare Plan the right of each Participant, or any other person to the payment of any benefits is limited by the terms of any Group Insurance Contract or Contracts, it being the express intention of this Trust Agreement that any terms and conditions of any Group Insurance Contract or Contracts that vary or differ from the Health and Welfare Plan or Trust, be considered an amendment to the applicable Plan or Trust, and that the sole right of any Participant, or any other person to benefits under a Group Insurance Contract is the payment of the benefits provided for by the Group Insurance Contract or Contracts.

6.3 Interest in Trust Fund. No Participant, or any other person has any right, title, interest in or to the General Trust Funds, or any part thereof; however, any Participant who is covered by a Group Insurance Contract or Contracts, or his beneficiary, is entitled to benefits in the amount and subject to the terms and conditions of the Group Insurance Contract or Contracts. No Participant, or any other person has any right, title, or interest in, or the option to receive, any part of the Contractors' contributions. No Participant, or any other person has the right to assign his benefits or receive a cash consideration in lieu of his benefits.

6.4 Rights Subject to Amendment. No Participant, or other person has any vested rights under the Trust, the Health and Welfare Plan but the rights of each Participant and the status of any person as a Participant is subject to the rights of the Trustees to amend and terminate the Trust and the Health and Welfare and to modify or eliminate benefits as hereinafter set forth.

6.5 Limitation of Legal Actions against the Health and Welfare Plan. Any legal action by a Participant, or dependent (or their representatives, agents, heirs, or assigns) to enforce a right to benefits under this Trust or the Health and Welfare Plan must be commenced within one year of the date the Participant, or dependent completes the administrative appeal of the benefit denial as stated in the Health and Welfare Plan. The situs of the Trust is Cook County, Illinois. Venue shall be in the United States District Court for the Northern District of Illinois. Any claims against the Trustees or their delegees involving a

matter for which discretionary authority is given by this Trust Agreement shall be determined under the arbitrary and capricious standard of review.

6.6 Entitlement to Benefits. Participants, and dependents, if applicable, shall be entitled to receive benefits for a claim pursuant to the provisions of this Trust Agreement and the applicable plan to this Trust Agreement as such provisions exist on the date that the claim is incurred. A subsequent amendment of the Trust Agreement or applicable plan will not affect the entitlement of a Participant, dependent, if applicable, to benefits incurred prior to the effective date of such amendment. This Section 6.6 shall not prevent the Trustees from enacting an amendment with an effective date that applies retroactively.

## ARTICLE VII
## TRUSTEES AND SUCCESSOR TRUSTEES

7.1 Classification of Trustees. This Trust shall be administered by ten (10) Trustees. Five (5) of the Trustees shall be known as the "UNION TRUSTEES" and five (5) of the Trustees shall be known as the "CONTRACTOR TRUSTEES." Of the Contractor Trustees, three (3) appointed by the Plumbing Contractors Association of Chicago and Cook County, shall be known as "CHICAGO ASSOCIATION TRUSTEES," and two (2) appointed by the West Suburban Plumbing Contractors Association shall be known as "THE WEST SUBURBAN TRUSTEES." One Alternate Trustee appointed by the Union shall be known as a "UNION TRUSTEE," one Alternate Trustee appointed by the Plumbing Contractors Association of Chicago and Cook County shall be known as a "CHICAGO ASSOCIATION TRUSTEE," and one Alternate Trustee appointed by the West Suburban Plumbing Contractors Association shall be known as a "WEST SUBURBAN TRUSTEE" with both Contractor Alternate Trustees being known as "CONTRACTOR TRUSTEES." Each Successor Trustee will have the same classification held by the Trustee who he replaces. The Trustees will serve, as the case may be, until his death, resignation, removal, or inability to act.

7.2 Resignation of Trustees. Any Trustee may resign by tendering his written resignation to the remaining Trustees.

7.3 Removal of Trustees. The Union, at any time, may remove a Union Trustee by serving written notice of removal upon the remaining Trustees. The Plumbing Contractors' Association of Chicago, at any time, may remove any Chicago Association Trustee by serving written notice of removal upon the remaining Trustees. The West Suburban Plumbing Contractors Association, at any time, may remove a West Suburban Trustee by serving written notice of removal upon the remaining Trustees.

7.4 Declaring Trustee Unable to Act. If any Trustee fails to attend three (3) consecutive meetings of the Trustees, the remaining Trustees may, in their discretion, declare the Trustee unable to act as Trustee, and, at that instant, a vacancy is created because of the Trustee's inability to act. The Trustees will promptly notify the proper person of the vacancy to permit the appointment of a Successor Trustee.

7.5 Appointment of Successor Trustee. In the event of the death, resignation, removal, or inability to act of a Union Trustee, the Business Manager of the Union may appoint a Successor Trustee to fill the vacancy that has been created. In the event of the death, resignation, removal, or inability to act of a Chicago Association Trustee, the President of the Plumbing Contractors' Association of Chicago may appoint a Successor Trustee to fill the vacancy that has been created. In the event of the death, resignation, removal, or inability to act of a West Suburban Trustee, the President of the West Suburban Plumbing Contractors Association may appoint a Successor Trustee to fill the vacancy that has been created. In each case, the Trustees will be notified in writing of the appointment of a Successor Trustee.

## ARTICLE VIII
## POWERS AND DUTIES OF TRUSTEES

8.1 General Control. Under this Trust Agreement, the Trustees have general supervision and control of the operation and administration of the Trust and the Health and Welfare Plan. To the extent permitted by law, the Trustees may delegate the fiduciary responsibilities relating to the operation and administration of the Trust and the Health and Welfare Plan among the Trustees or to any other person and, except as may be otherwise provided for by Section 405(c) of ERISA, the Trustees (other than those to whom a fiduciary responsibility has been so delegated) will not be liable or responsible for any act or omission of the person or persons delegated fiduciary responsibility. Specifically, but not in limitation of the foregoing general grant of powers, the Trustees shall have the following powers:

(a) all the powers and rights necessary or desirable for the proper administration of the Trust;

(b) with respect to the Trust they shall have all the rights and powers of a person having individual ownership of property, and may buy, sell, mortgage, pledge and convey, and otherwise acquire and dispose of, and contract with respect to, and sue and defend in any court of competent jurisdiction in any proceeding relating to any of the Trust property;

(c) the powers to enter into any and all contracts and agreements for the carrying out the terms of the Trust and the Health and Welfare Plan and for the administration of the Trust and the Health and Welfare Plan, and to do all acts as they, in their discretion, may deem necessary or advisable and such contracts, agreements, and acts shall be binding and conclusive upon the Union, the Employers, Participants, Dependents, and any other interested parties;

(d) to furnish to any Contractor, sponsoring plumbing contractors' association, or to the Union, upon request, such supplemental reports with respect to the administration of this Plan as are determined to be reasonable and appropriate by the Trustees;

(e) do all acts, whether or not expressly authorized herein, which the Trustees deem necessary or proper for the protection of the Trust and their judgment shall be final; and

(f) to cause the Trust to be merged, consolidated or combined with, or into, another one or more multi-employer fund similarly created in accordance with any limitations as may be prescribed by applicable law.

8.2 Purchase of Group Contracts. The Trustees may, from time to time, in their discretion, purchase from any insurance company, one or more Group Insurance Contracts to provide the benefits under this Trust Agreement and the Health and Welfare Plan. Any Group Insurance Contract providing benefits different from those set out in the Trust and the Health and Welfare Plan is, to such extent, regarded as an amendment to the Trust and the Health and Welfare Plan.

8.3 Investment of the Separate Accounts. The Trustees have full power and authority to receive, collect, receipt for, hold, manage, and care for all amounts paid and contributed to the Trust Fund, including proceeds, income and profits on the contributed amounts, as a single fund, and to invest and reinvest all or a portion of the Trust assets in bonds, notes, conditional sales contracts, debentures, real estate, stocks and any other security or interest in income producing property as the Trustees deem advisable, provided that all investments will comply with the requirements of Section 404 of ERISA. The Trustees are further authorized and empowered to sell, exchange, convert, or transfer any property of the Trust; to retain un-invested for any time deemed in the best interest of the Trust any cash held in the Trust; to exercise or dispose of all rights accruing to the holders of any securities; and to join in, by deposit, pledge, or otherwise any plan or reorganization or other means of protecting and dealing with securities. The Trustees are expressly authorized, in their discretion, to delegate the investment powers granted to them by this Trust Agreement to an investment manager if the investment manager meets all the requirements set forth in Section 3(38) of ERISA. If the Trustees delegate investment powers, the Trustees have no duty or obligation to supervise or control in any way the investments made and will in no way be liable or responsible on account of any investments made or retained by the investment manager, whether or not the investments are authorized by this Trust Agreement, or for any acts or omissions of the investment manager. Any bank designated as an investment manager under this Section 8.3 may invest all or a part of the assets under its management in deposits that bear a reasonable rate of interest, in accounts maintained in its own banking department, if the investment is permitted by Section 408(b) of ERISA.

8.4 Power to Borrow Money. The Trustees may, from time to time, borrow funds necessary to maintain any Group Insurance Contract held by the Trustees, or to carry out the purposes of this Trust, and may pledge all or a portion of the Trust property, as security, and execute notes or other instruments to evidence any indebtedness; provided, however, indebtedness will not constitute a personal obligation of the Trustees, the Union, or the Contributing Contractors, or any of them, but will be enforceable only against and satisfied only out of the Trust property.

8.5 Compensation for Services. The Trustees shall not receive any compensation for their services as Trustees unless otherwise permitted by ERISA, but shall be reimbursed, from the General Trust Fund, for reasonable out-of-pocket expenses incurred in connection with their duties as Trustees.

8.6 Employment of Agents and Payment of Expenses. The Trustees may employ employees, agents, accountants, actuaries and attorneys that are reasonably necessary to collect, manage, distribute and protect the Trust Fund and their compensation, as well as the reasonable and proper expenditures made by the Trustees in administering the Trust, may be paid out of the General Trust Funds.

8.7 Power to Collect Contributions. The Trustees are authorized to collect, demand, receive, and sue for contributions to the Trust due and payable from any Contributing Contractor under any agreement with the Union or among the Contractors.

8.8 Co-Chairmen and Secretary. The Board will have two Co-Chairmen, a Union Co-Chairman appointed by a majority vote of the Union Trustees and a Contractor Co-Chairman appointed by a majority vote of the Contractor Trustees, each to serve a two year term. The Co-Chairmen will alternately preside over meetings of the Trustees and may perform any ministerial duties that are delegated by the Trustees. The Trustees will elect a Secretary, who need not be a Trustee, to keep a complete and accurate record of all meetings of the Trustees, of all receipts and disbursements, and of all other matters pertaining to the administration of the Trust. The records maintained by the Secretary will be available for inspection by all of the Trustees during ordinary business hours. The Secretary is subject to removal by the majority vote of the Trustees at any time.

8.9 Meetings. The Trustees may hold regular meetings at a time determined, from time to time, by the Trustees and a special meeting of the Trustees may be called by either Co-Chairman or by any three (3) Trustees. No notice is required for regular meetings, but at least forty-eight (48) hours written notice will be given for any special meeting. Notice will be waived by any Trustee attending a meeting in person or by proxy unless he attends for the sole purpose of objecting to lack of proper notice and notice may be waived either before or after any meeting by a written waiver of notice.

8.10 Quorum and Manner of Acting. Seven (7) Trustees present in person, by proxy, or by Alternate Trustee, constitute a quorum for the purpose of holding a meeting and transacting business. A majority of members of a committee of Trustees present in person or by proxy constitute a quorum for the purpose of holding a committee meeting and transacting business of such committee.

Any Trustee may give a written proxy to another Trustee or to an Alternate Trustee of the same classification (e.g. Union Trustee or Contractor Trustee) to act on his behalf. A Trustee, or Alternate Trustee, in receipt of a proxy is entitled to act for the Trustee whose proxy he holds, in the same manner and with the same effect as the absent Trustee could act if present. If a Trustee is not present at any meeting of the Trustees and fails to designate a proxy, the Alternate Trustee of the same classification (e.g. Union Trustee or Contractor

Trustee) if present, is authorized to act on behalf of the absent Trustee in the same manner and with the same effect as the absent Trustee could act if present. If more than one Trustee of the same classification is absent from the meeting, the Alternate Trustee of the same classification will act only for the absent Trustee with the shortest tenure as a Trustee.

Each Trustee is entitled to one vote on any matter considered by the Trustees and, except as otherwise provided in this Trust, all decisions and actions of the Trustees on the administration of the Trust, the exercise of the powers of the Trustees, the payment of benefits, and all matters germane to the administration of the Trust or Plan, including the making of rules and regulations, must be made at any meeting by the decision of at least a majority or more of such Trustees present in person or by proxy, and is binding upon all of the Trustees. Matters of an urgent nature pertaining to the administration of the Plan and Trust may be reviewed and voted on outside of a regular or special meeting by the Trustees by way of an email poll or a telephone conference after advanced notice of such matter is provided to the Trustees.

An Alternate Trustee has no power to act or vote on any matter unless designated to act under this Section but at all times has the authority to participate in discussions of Trust business conducted at any Trustee or subcommittee meeting. An Alternate Trustee is not counted in determining a quorum unless designated to act under this Section.

8.11 Rule Making and Interpretive Powers. The Trustees, or a designated committee thereof, have the power to adopt rules and regulations for the administration of the Trust and the Health and Welfare Plan; to interpret, construe, and apply the provisions of the Trust and the Health and Welfare Plan and any rules and regulations promulgated under the Trust or the Health and Welfare Plan; and to make factual findings. All persons dealing with the Trust or claiming benefits are bound by the terms of the Trust, the Health and Welfare Plan, and any rules and regulations promulgated by the Trustees, or a designated committee thereof, any interpretation, construction, or application by the Trustees, or a designated committee thereof, of the terms of the Trust, the Health and Welfare Plan, or any rules or regulations, and any factual findings made by the Trustees, or a designated committee thereof.

Notwithstanding any provision to the contrary, benefits under the Health and Welfare Plan will be paid only if the Trustees, or a designated committee thereof, decide in their discretion that the applicant is entitled to them. The Trustees, or a designated committee thereof, shall have the exclusive right to interpret the provisions of the Trust, the Health and Welfare Plan, and to determine any questions arising hereunder or in connection with the administration of the Trust, the Health and Welfare Plan (including the remedying of any omission, inconsistency or ambiguity). The Trustees' decision, or the decision of the designated committee, or action in respect thereof shall be conclusive and binding upon any and all Participants, dependents or other interested parties.

For purposes of example and not of limitation, the Trustees, or a designated committee thereof, have the sole and exclusive right to determine, for purposes of the Trust, the Health and Welfare Plan whether any requested medical care, medical services, or medical supplies are medically necessary or reasonable; whether any requested medical care, medical services,

or medical supplies are experimental or investigational; the reasonable and customary charge for any medical care, medical services, or medical supplies; whether an individual is sick or disabled for purposes of the Trust, the Health and Welfare Plan; and the meaning and application of any Plan or Trust provision requiring interpretation, including any ambiguous provisions. The Trustees, or a designated committee thereof, in exercise of their powers are authorized to fix omissions from any provision of the Health and Welfare Plan , the Trust, any rules and regulations, or any benefit communications.

8.12 Accounts and Records of Trustees. The Trustees will maintain books, records, and accounts to accurately disclose the condition of the Trust and General Trust Fund. The Trustees will have an annual audit of the Trust Fund made within a reasonable period of time after the close of each Plan Year by a firm of independent certified public accountants. The Trustees shall deliver a copy of each annual audit together with any report for that year as the Trustees may desire to make, to the Union, the Plumbing Contractors' Association of Chicago and Cook County, and The West Suburban Plumbing Contractors' Association, and will keep a copy of each audit and report on file at the office of the Trustees. The Trustees will keep a copy of the Minutes of their meetings on file at the office of the Trustees. The Trustees, at any time, may apply to a court of competent jurisdiction for the judicial approval of their accounts and only the Trustees are necessary parties to any legal action, and any judgment or decree entered is conclusive and binding upon all parties having or claiming to have an interest in the Trust or under the Health and Welfare Plan.

8.13 Effect of Trustees' Receipt. No person or corporation dealing with the Trustees is required to inquire into the terms of the Trust, or to see that they are complied with, and the receipt of the Trustees is conclusive evidence of the discharge of the obligation for which the receipt is given. For these purposes, a canceled check is a receipt of the Trustees.

8.14 Powers of Successor Trustees. All Trustees, from time to time, acting hereunder have the powers, duties, and rights of the original Trustees named in this Trust.

8.15 Execution of Documents. Any application for a Group Insurance Contract, direction to an insurance company, or other instrument or document required to be executed by the Trustees in connection with the performance of their duties under this Trust will be executed by a Union Trustee and a Contractor Trustee, and no insurance company or other person has any obligation to inquire into the propriety of the action, but may conclusively assume that the action is authorized by the Trustees.

8.16 Reliance on Opinion of Counsel. To the extent permissible under ERISA and applicable law, the Trustees may rely upon all opinions given by legal counsel selected by the Trustees, and the opinion of counsel selected by the Trustees, is full and complete authority and protection for any action taken, suffered, or omitted by the Trustees in good faith based upon the opinion.

8.17 Limitation on Liability. To the extent permissible under ERISA and applicable law, the Trustees have no liability or responsibility for the form, genuineness, validity, sufficiency or effect of any Group Insurance Contract, or any other contract,

certificate, or policy issued by an insurance company, or for the act of any person or persons rendering any contract, certificate, or policy void or unenforceable, for the failure of any insurance company to pay the proceeds, avails, and profits of any contract, certificate, or policy when due and payable, or for any delay occasioned by reason of any policy restriction or provision, or, if, for any reason whatsoever, any contract, certificate, or policy lapses or otherwise becomes uncollectible.

8.18 Indemnity of Trustees. The West Suburban Association of Plumbing Contractors, shall indemnify and save harmless from and against any or all liability the Contractor Trustees appointed by the West Suburban Association of Plumbing Contractors may be subjected to by reason of any act they, or any of them, may take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Plumbing Contractors' Association of Chicago and Cook County shall indemnify and save harmless from and against any or all liability the Contractor Trustees appointed by the Plumbing Contractors' Association of Chicago and Cook County may be subjected to by reason of any act they, or any of them, may take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Union indemnifies and saves harmless from and against any or all liability the Union Trustees, or any of them, may be subjected to by reason of any act they, or any of them, take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Trustees shall purchase insurance for the Trust and its Trustees to cover liability and otherwise indemnify Trustees in the event of claims against them; such insurance, however, shall not preclude recourse by the Trust in a case of a breach of fiduciary obligations.

Except in accordance with applicable federal law, no successor Trustee shall be personally liable for any act or omission of a predecessor Trustee nor shall any Trustee be personally liable for the payment, performance or discharge of any obligation, debt, contract or liability of the Trust. All contracts, debts, obligations and liabilities contracted or incurred by the Trustees in the proper discharge of their duties shall be paid and discharged by the Trust. Nothing in this instrument, however, shall exempt any Trustee from liability arising, by reason of his failure to discharge his duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; nor shall any Trustee be entitled to be indemnified by the Trust from any liability arising from such causes.

8.19 Deadlock. If there is a failure of a majority of the Trustees present, in person or by proxy, at a meeting where there is a quorum, to agree upon any matter relating to the administration of the Trust Fund, distribution of the Trust Fund, or any other matter relating to the Trust (including the adoption of rules and regulations, but excluding amendments to the Trust or the Health and Welfare Plan), within thirty (30) days after a vote on any subject matter was taken at a meeting of the Trustees, the Trustees will agree on an impartial umpire to decide the dispute. If the Trustees fail to appoint an impartial umpire within that thirty (30) day period, an impartial umpire will, on petition of any Trustee, be appointed by the Chief Judge of the United States District Court for the Northern District of Illinois, Eastern Division. The decision of the umpire selected or appointed is binding upon the Trustees and upon all

interested parties or persons. The compensation of the umpire selected or appointed and all expenses incurred by him and by the Trustees, shall be paid by the Trustees out of the General Trust Fund.

8.20 Medical Consultant. The Trustees may retain one or more Medical Consultants to advise the Trustees and the Secretary on all matters of medical knowledge, and the Trustees are fully protected in relying upon and acting upon the advice of the Medical Consultant.

8.21 Claims Appeals. The Trustees shall have the power and authority to establish reasonable claims and appeals procedures should a participant or dependent wish to appeal a denied benefit claim under the terms of the Health and Welfare Plan. Participants and dependents are required to exhaust their administrative appeal procedures under the terms of the Health and Welfare Plan prior to filing any lawsuit or administrative claim against the Trust Fund. No lawsuit or administrative claim may be brought against the Trust Fund if it is not filed within one year from the date of receipt of the adverse benefit determination on appeal.

8.22 Field Representative. The Trustees may hire a Field Representative, who need not be a Trustee, who shall investigate the accuracy of contributions made to the Plan, cooperate with the Trustees and any committees, in obtaining information for the proper performance of his duties, and perform such other duties as may be assigned to him by the Trustees or any subcommittee. The Field Representative shall be subject to removal by the Trustees at any time.

## ARTICLE IX
## PROVISIONS RELATING TO INSURANCE COMPANIES AND GROUP INSURANCE CONTRACTS

9.1 Insurance Company Not Party to Trust. No insurance company or companies issuing any Group Insurance Contract or Contracts to the Trustees under this Agreement will be considered a party to this Trust, or any modification, amendment or supplement to this Trust. Nothing in this Trust, or in any modification, amendment, or supplement to this Trust, will in any way be construed to enlarge, change, vary, or in any way affect the obligations of any insurance company as expressly provided in any policy or contract issued by it.

9.2 Authority to Deal with Trustees. It is understood that any issuing insurance company may deal with the Trustees alone in accordance with the terms and conditions of any Group Insurance Contract or Contracts issued, and in the manner as the Trustees and the insurance company agree without the consent of any other person or persons interested in this Trust. No issuing insurance company is required to examine the provisions of this Trust or any modification, amendment, or supplement to the Trust. No issuing insurance company is responsible for the failure of the Trustees to perform their duties as such for the application or disposition of any money paid or to be paid to the Trustees; and any payment fully discharges the issuing insurance company for the amount paid.

9.3 Payment as Discharge. The payment or delivery of any money or contract, certificate, or policy issued by an insurance company in any settlement, whether made by the

Trustees or directly by the insurance company, fully acquits and discharges the Trust and Trustees from all further liability under the Health and Welfare Plan.

## ARTICLE X
## CONTROVERSIES AND DISPUTES

10.1 Reliance on Record. In any controversy, claim, demand, suit of law, or other proceeding between the Trustees and any Participant, beneficiary, or other person, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, and any instruments on file with the Trustees, with the Union or with the Contractors, any facts certified to the Trustees by the Union or any Contractor, and any facts that are of public record, and any other evidence pertinent to the issue involved.

10.2 Submission to Trustees. All questions or controversies of any character arising between any parties or persons in connection with administration or operation of the Trust Fund including benefit claims made by any Participant, beneficiary, or any other person; questions concerning the construction, interpretation, or application of the language of the Health and Welfare Plan or the Trust, rules and regulations adopted by the Trustees, or any other writing, decision, or instrument; or any other act involving the operation or administration of the Trust Fund will be submitted to the Trustees for decision. The Trustees have the power and authority to take any and all actions and interpretations required to resolve all questions and controversies; including the power to make factual findings; to fix omissions in the Trust, the Health and Welfare Plan, any rules and regulations promulgated by the Trustees or any benefit communications; to resolve ambiguities; and to construe the terms of the Trust, the Health and Welfare Plan, and any rules and regulations promulgated under the Trust and Plan. The Trustees shall have final authority and decision making ability to construe and interpret the terms of the Trust and Plan. All decisions, determinations, interpretations, and findings of the Trustees are binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

10.3 Compromises. The Trustees may, in their sole discretion, compromise or settle any claim or controversy in the manner they think best, and any decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, is conclusive and binding on all persons interested in this Trust.

## ARTICLE XI
## AMENDMENT AND TERMINATION

11.1 Right to Amend. The Trustees, by action of a majority of the Trustees present, in person or by proxy, at a meeting where a quorum exists, may amend or modify the Trust and, the Health and Welfare Plan. Without, in any way, limiting the generality of this right, the Trustees may, by a duly adopted amendment, change the eligibility requirements for participation, modify or terminate the benefits provided for by the Health and Welfare Plan and adopt a new plan providing for benefits for employees, former employees, Contributing

Contractors, or their beneficiaries. Any amendment made by the Trustees will be made by a written instrument signed by a majority of the Trustees present and may be effective on any date prior to or following its execution. An amendment made to a Group Insurance Contract will be made by a resolution authorizing the action and approved by not less than a majority of the Trustees present.

11.2 Limitation on Amendments. The right of the Trustees to amend the Trust, and the Health and Welfare Plan is subject to the following limitations:

(a) No amendment will vest in any Contributing Contractor any interest in or control over any Group Insurance Contract or any other assets of the General Trust Fund.

(b) No amendment will divert any Group Insurance Contract or other assets of the General Trust Fund to purposes other than for the exclusive benefit of employees or former employees of Contributing Contractors or their beneficiaries.

11.3 Termination of Trust and Plan. The Union and the Contractors' Associations, together with the Trustees, at any time by written agreement, may terminate this Trust and the Health and Welfare Plan at any time, and cause the Trust and Health and Welfare Plan to be liquidated as provided in this Article. Until such time, this Trust will continue until all the assets of the General Trust have been applied or disbursed by the Trustees for the purposes of the Trust, the Health and Welfare Plan, namely, the health and welfare of those eligible to participate in the Trust and Plans, and until all assets have been expended or disbursed, the Trustees will continue to have and to exercise all the powers, rights, duties, and discretions given to or imposed upon them by this Trust Agreement. When all the assets of the General Trust Fund are expended or disbursed, the Trust, the Health and Welfare Plan will terminate.

11.4 Distribution of Trust Upon Termination. Any distribution upon such liquidation of the Fund, or at any time thereafter, may be made, in whole or in part, to the extent that no diminution in value results, in cash, in securities, or in other assets in kind, or in insurance or annuity contracts, as the Trustees in their discretion may determine, having regard for the nature of the Fund. In making such distribution, any and all divisions, appraisals, apportionments, and allotments made by the Trustees and all actuarial determinations and evaluations made by the actuary employed by the Trustees shall be final and not subject to question by any Participant, retired Participant, or other person. The Trustees may affect such liquidation by the continuance or amendment of any existing trust or trusts or by the making of one or more new trust agreements or insurance company contracts or any combination thereof.

## ARTICLE XII
## SPENDTHRIFT CLAUSE

12.1 All proper benefit payments to Participants, Dependents, or beneficiaries are, except as to minors and persons under legal disability, paid to Participants, dependents, or

beneficiaries in person and are not grantable, transferable, or otherwise assignable in anticipation of payment in whole or in part, by the voluntary or involuntary acts of any Participant, dependent, or beneficiary, or by operation of law, and are not liable or taken for any obligation or debt of the Participant, dependent, or beneficiary, including alimony; provided, however:

(a) Any benefit payable under the Welfare Plan may, at the sole discretion of the Trustees, be paid directly to the individual or institution that provided the covered services;

(b) Any benefit payable for claims incurred after August 9, 1993, by an eligible Dependent named as an alternate recipient under the terms of a Qualified Medical Child Support Order (as defined by Section 609 of ERISA) may be paid directly to the individual or institution that provided the covered services (except in cases where the Participant or the alternate recipient's custodial parent or legal guardian establishes that they are personally entitled to reimbursement of amounts personally advanced in payment of expenses covered by the Welfare Plan).

In any case, the payment will, for all purposes, be considered the same as a payment directly to the Participant, dependent, or beneficiary entitled to receive the payment.

12.2 No monies, property or equity of any nature whatsoever in the Trust or Trust Fund or policies or benefits or monies payable therefrom shall be subject in any manner, by any Participant or dependent, or person claiming through such Participant or dependent, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien, or charge and any attempt to cause the same to be subject thereto shall be null and void. This provision shall not apply to benefits that have been assigned from a Participant to a dependent pursuant to the terms of a qualified medical child support order as provided by ERISA.

## ARTICLE XIII
## MISCELLANEOUS

13.1 No Refunds. Except as may be approved by the Trustees and permitted by Federal law, neither the Union nor any Contractor will receive, directly or indirectly, a refund of contributions made to the Trust, either directly or indirectly, participate in the distributions of the Trust Fund or receive any benefit from the Trust Fund. Upon transfer to the Trustees, the responsibilities of the Union and the Contributing Contractors for any contribution ceases, and the Union and the Contributing Contractors have no responsibility for the acts of the Trustees.

13.2 Withholding of Payments. If any question or dispute arises concerning the proper person or persons entitled to payments or benefits under the Trust or the Health and Welfare Plan, the Trustees may withhold payment until an adjudication of the question or

dispute is made, satisfactory to the Trustees in their sole discretion, and the Trustees may require adequate and satisfactory indemnification against loss.

13.3 Reliance on Documents. To the extent permissible under ERISA and applicable law, the Trustees will incur no liability in acting upon any instrument, application, notice, request, signed letter, facsimile transmission, electronic transmission or other paper or document believed by them to be genuine and to contain a true statement of facts.

13.4 Liability of Trustees. To the extent permissible under ERISA and applicable law, the Trustees will incur no liability for any failure to collect (whether arising from failure to make demand or failure to take any steps or institute any proceedings) any sums due the Trust from any Contractor. No Trustee is liable for any act or default of any Co-Trustee, predecessor Trustee, the Union, or any Contractor. In the exercise of their discretionary powers, the Trustees may act solely upon their own best judgment upon the facts brought to their attention, without liability for errors of judgment and with complete immunity from liability for losses, damages, or liabilities sustained by the Trust, the Union, any Contractor, or by any Participant, or other person, to the extent permissible under ERISA and applicable law. The Fund shall purchase such fiduciary liability insurance as is permitted by law. The individual Trustees, in their sole discretion, may purchase such individual fiduciary liability insurance as they see fit.

13.5 Reporting, Withholding and Payment of Taxes. The Trustees, in those cases where alternative procedures are available for the reporting, withholding, or payment of any tax may select the procedure that is the least burdensome and least costly to the Trust. In the event the Trustees elect to report directly to the Internal Revenue Service the amount of Weekly Sickness and Accident benefits paid to any Participant, this Trust may be considered the agent of the Participant's employer for purposes of Internal Revenue Code Section 6051(f), and the regulations thereunder.

13.6 Use of Last Address. Any money, checks, remittances, or things to be paid, disbursed or forwarded to any Participant, or beneficiary by the Trustees, whether directly or through an insurance company, may be mailed, postage prepaid, to such person at the address shown on the books of the Trustees, or if there is no such address, the last known address as shown on the records of the Union or the last employer. The Trustees are fully discharged in making payments under this provision and the risk of any loss is on the Participant, Former beneficiary, or his beneficiary.

13.7 Information Furnished by Union, Contributing Contractors and Participants. The Union, the Contributing Contractors, and each Participant must furnish the Trustees any information as they may, from time to time, request for the purpose of administering this Trust; the Trustees are entitled to rely conclusively on any information furnished or representations made by the Union, a Contributing Contractor or any Participant.

13.8 Not Employment Contract. Nothing in this Trust may be construed to constitute an employment contract between any Contractor and Employee.

13.9 Article and Section Titles. The Article and Section titles are included solely for convenience and will not be construed to affect or modify any provisions of this Agreement or be construed as part thereof.

13.10 Gender and Case. Where used in this Agreement, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural in all cases where these constructions would apply.

13.11 Construction. It is intended that this Trust Agreement, the Health and Welfare Plan, and any other plan of benefits established by the Trustees will comply with the provisions of ERISA and constitute a voluntary employees' beneficiary association under the provisions of Section 501(c)(9) of the Internal Revenue Code and, accordingly, the provisions of this Trust Agreement, the Health and Welfare Plan, and any other plan of benefits established by the Trustees will be construed and applied in a manner consistent with this intent.

13.12 Legality of Certain Provisions. If any provision of this Trust Agreement is held illegal or invalid for any reason, the illegality or invalidity will not affect the remaining parts of the Trust or Plan created hereby; but this Trust Agreement will be construed and enforced as if the illegal and invalid provision was not inserted herein.

13.13 Notification by Participants and Beneficiaries. A Participant or Beneficiary, if applicable, is required to inform the Trustees of any change in the employment status or family status (including but not limited to divorce, legal separation), as well as their home address, that may affect the benefits of the Participant or Beneficiary, if applicable, to continue to participate in and receive benefits under any Plan which is a part of this Trust Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Restatement as Trustees of the PLUMBERS' WELFARE FUND, LOCAL 130, U.A., for the purpose of evidencing their unanimous consent to the Trust as amended and restated.

Executed in Chicago, Illinois this 6th day of December, 2016 to be effective January 1, 2017 and thereafter.

| CONTRACTOR TRUSTEES | UNION TRUSTEES |
|---|---|
| David Ariano | James F. Coyne |
| David Kerrigan | Kenneth Turnquist |
| James O'Sullivan | James Mansfield |
| Brian Burns | William E. Matthies |
| Michael Chapel | Scott Spangle |
| S.J. Peters (Alternate Trustee) | Michael Shea (Alternate Trustee) |

4817-3257-5037, v. 2

# 2017 Restatement of the Trust Agreement of the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A.

## Table of Contents


ARTICLE I NAME OF TRUST.......... 4

ARTICLE II DEFINITION OF TERMS.......... 4

ARTICLE III PURPOSE OF TRUST AND APPLICATION OF FUNDS.......... 6

ARTICLE IV ELIGIBILITY FOR PARTICIPATION IN THE RETIREE MEDICAL PLAN.......... 7

ARTICLE V OBLIGATIONS OF CONTRIBUTING CONTRACTORS.......... 7

ARTICLE VI RIGHTS OF PARTICIPANTS.......... 8

ARTICLE VII TRUSTEES AND SUCCESSOR TRUSTEES.......... 9

ARTICLE VIII POWERS AND DUTIES OF TRUSTEES.......... 10

ARTICLE IX PROVISIONS RELATING TO INSURANCE COMPANIES AND GROUP INSURANCE CONTRACTS.......... 17

ARTICLE X CONTROVERSIES AND DISPUTES.......... 17

ARTICLE XI AMENDMENT AND TERMINATION.......... 18

ARTICLE XII SPENDTHRIFT CLAUSE.......... 19

ARTICLE XIII MISCELLANEOUS.......... 19

**2017 Restatement of the Trust Agreement of the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A.**

WHEREAS, through collective bargaining , the Chicago Journeymen Plumbers, Local Union No. 130, of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, the Plumbing Contractors Association Midwest, and the West Suburban Plumbing Contractors Association have determined that in order to provide benefits to retirees and their eligible spouses in conformity with applicable law, it is appropriate to restate the trust for the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A. which provides benefits for persons who are retirees and not eligible for the health and welfare plan for active employees of the Plumbers' Welfare Fund, Local 130, U.A.;

WHEREAS, the undersigned are Trustees of the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A., created by a Trust Agreement ("Agreement") originally effective January 1, 2014, which has been amended from time to time;

WHEREAS, under Section 11.01 of the Trust Agreement, the undersigned are authorized to amend the Trust;

WHEREAS, the Trustees wish to now restate the Trust of the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A., effective January 1, 2017;

NOW, THEREFORE, the Trust of the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A. is amended and restated to read as follows:

## ARTICLE I
## NAME OF TRUST

The Agreement created the Trust known as the TRUST AGREEMENT OF THE RETIREE MEDICAL PLAN OF THE PLUMBERS' WELFARE FUND, LOCAL 130, U.A. TRUST (sometimes hereinafter referred to as the "Trust" or "Trust Agreement").

## ARTICLE II
## DEFINITION OF TERMS

The following definitions control for purposes of this Trust Agreement:

2.1 The term "Affiliated Employer" means the Chicago Journeyman Plumbers' Union, Local 130, U.A., the Plumbers' Pension Fund, Local 130, U.A., the Plumbers' Welfare Fund, Local 130, U.A., the Apprentice and Journeymen Education and Training Trust Fund, Local 130, U.A., the Kankakee & Iroquois Counties Plumbing & Piping Contractors Association, the West Suburban Association of Plumbing Contractors, and the Plumbing Contractors' Association Midwest. An entity will not be an Affiliated Employer unless it executes a participation agreement with the Trust that is approved by the Trustees or is otherwise approved by the Trustees to participate as an Affiliated Employer.

2.2 "Contractor" means those individuals, corporations, partnerships, limited liability companies, firms, or associations who are regarded as Contractors and are legitimately so engaged under the customs and usage of the trade, except that the Union is regarded as a Contractor for the purpose of this Trust. The Trustees have the unqualified right to reject the application for participation of any employer who is not a Contractor under the customs and usage of the trade, and their decision on any employer application is final and binding.

2.3 The term "Contractors' Associations" shall refer to the Plumbing Contractors' Association Midwest, and the West Suburban Association of Plumbing Contractors.

24 "Covered Employment," "Work in Covered Employment," "Employment in the Craft," and "Employed in the Craft" mean the employment of an employee within a bargaining unit represented by the Union, or within a bargaining unit represented by the Technical Engineering Division, Local 130, U.A., AFL-CIO, and on account of such employment the employer is required to make contributions to this Trust. The terms "Covered Employment," "Work in Covered Employment," "Employment in the Craft," and "Employed in the Craft" include full-time employment of a member of the Union as an employee of the Union.

2.5 "ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

2.6 The "Fiscal Year" of the Trust, and the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A., means the period beginning on the first day in June in each year and ending on the thirty-first day of the following May. The records of the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A., and the Trust established by the Trust Agreement will be kept on the basis of the Fiscal Year.

2.7 "Group Insurance Contract" means any Group Insurance Contract issued to the Trustees by an insurance company and is a contract or agreement obtained by the Trustees under which a corporation, authorized by the Trustees, pays for specified health, medical, vision, life, or dental services provided to a Participant or a dependent of a Participant in return for a premium paid by the Trustees.

2.8 "Insurance Company" means any insurance company that, upon application of the Trustees has issued one or more Group Insurance Contracts for the Trust, the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A., and is a corporation authorized to issue a Group Insurance Contract whether or not incorporated as an insurance company under state law, and expressly includes contracts entered into with corporations organized under the following acts of the State of Illinois; the Dental Service Plan Act and the Vision Service Plan Act.

2.9 "Members" means Members of the Union. An individual who becomes or is a Member of the Union retains that status until he is expelled or withdraws from the Union. A suspension of membership for non-payment of dues does not terminate membership for the purpose of this Trust.

2.10 A "Participant" is a Retiree as such term is defined in the Retiree Medical Plan, and his or her eligible spouse who is eligible to participate in the Retiree Medical Plan pursuant to the terms of the Retiree Medical Plan under Article IV of this Trust.

2.11 "Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A.," "Retiree Medical Plan," or "Plan" means the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A., and refers specifically to any Group Insurance Contract or Contracts acquired by the Trustees under the terms of this Trust Agreement. If any Group Insurance Contract or Contracts differ from the Retiree Medical Plan, including as set forth in the Retiree Medical Plan is considered amended to conform to any Group Insurance Contract or Contracts.

2.12 "Trustees" means the originally named Trustees, their successors who are duly appointed under this Trust Agreement, and the Alternate Trustees when authorized to act by a Trustee in the manner prescribed by Article VIII of this Trust. The Trustees in their collective capacity are known as the "TRUSTEES OF THE RETIREE MEDICAL PLAN OF THE PLUMBERS' WELFARE FUND, LOCAL 130, U.A." and will conduct the business of the Trust and execute all instruments in that name. The Trustees are designated as the administrator, plan administrator, and named fiduciary of the Plan for the purpose of ERISA.

2.13 "Trust Fund" or "General Trust Fund" means all property and assets of the Trust including any Group Insurance Contracts purchased by the Trustees for the benefit of Participants.

2.14 "Union" means the CHICAGO JOURNEYMEN PLUMBERS, LOCAL UNION NO. 130, OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA, or in the case of a dissolution or disaffiliation of the Union, any successor to the Union. Where appropriate, it shall also refer to any other labor organization which has consolidated with, or merged with the Union.

## ARTICLE III
## PURPOSE OF TRUST AND APPLICATION OF FUNDS

3.1 Purpose of Trust. The primary purpose of the Trust is to provide the health and welfare benefits set forth in the Retiree Medical Plan of the Plumbers' Welfare Fund, Local 130, U.A. The general purpose of the Trust is to provide, in accordance with amendments to the Retiree Medical Plan and Trust adopted from time to time by the Trustees, any additional benefits permitted by law as, in the opinion of the Trustees, the Trust may permit.

3.2 Application of Funds. The Trustees shall use and apply the General Trust Funds to carry out the purpose of the Trust as follows:

(a) To pay and provide for payment of all the reasonable and necessary expenses of collecting contributions from Contractors and administering the affairs of the Trust.

(b) To pay or provide for the payment of the benefits set forth in the Retiree Medical Plan, and any other plan of benefits established by the Trustees, or the premiums on any Group Insurance Contract or Contracts issued to the Trustees for the purpose of providing benefits.

(c) To establish and accumulate reasonable reserves that the Trustees, in their sole discretion, determine necessary or desirable for the performance of the purposes of the Trust and to provide additional benefits.

(d) To pay or provide for the payment of any additional benefits that the Trustees may, from time to time, provide by amendment to the Trust, the Retiree Medical Plan and any other plan of benefits established by the Trustees.

(e) To act in a settlor capacity to allocate General Trust Funds, including assets, contributions, payments and reserves, as they deem between

and among the Retiree Medical Plan and any other plan of benefits established by the Trustees.

3.3 Limitation of Use of Funds. The Trust Fund and all Trust income must be set aside and used solely for the purpose of providing those benefits established by the Retiree Medical Plan and any other plan of benefits established by the Trustees in the manner described in Section 501(c)(9) of the Internal Revenue Code and for the payment of reasonable costs of administration directly connected with the Trust purpose.

3.4 Contributions to the Trust Fund. Contributions to the Trust Fund shall be in such amounts as may be established from time to time by the applicable Collective Bargaining Agreement or participation agreement with the Union or the Trust Fund. Each Contributing Contractor making contributions to the Fund shall make such contributions by check, draft, money order, or other form of payment acceptable to the Trustees delivered to the Trustees or a party designated by them.

## ARTICLE IV
## ELIGIBILITY FOR PARTICIPATION IN THE RETIREE MEDICAL PLAN

4.1 The terms governing eligibility for Participation in the Retiree Medical Plan are set forth in the Retiree Medical Plan document and any subsequent amendment approved by the Board of Trustees and those documents shall determine any issue regarding Eligibility for Participation in the Retiree Medical Plan.

## ARTICLE V
## OBLIGATIONS OF CONTRIBUTING CONTRACTORS

5.1 Any Contractor contributing to this Trust under the terms of an agreement with the Union, providing for contributions is a Contributing Contractor for the period of time for which contributions are being made. Any Contractor contributing to this Trust pursuant to the terms of an agreement with the Technical Engineering Division, Local 130, U.A., AFL-CIO, providing for contributions to this Trust is a Contributing Contractor for the period of time for which contributions are being made. An Affiliated Employer is a Contributing Contractor during the period of time it contributes to this Trust in the same manner as other Contributing Contractors.

5.2 Each Contractor shall contribute to the Fund on behalf of eligible Employees in accordance with the applicable collective bargaining agreement or participation agreement. Contractors shall remit payment on a monthly basis pursuant to the instructions provided to each Contractor; contributions for each month shall be sent by the deadline established in the applicable collective bargaining agreements, or if no such deadline is established, under rules promulgated by the Trustees. Contractors subject to a weekly payment arrangement shall remit payments weekly.

5.3 Any Contractor who fails to make contributions under paragraph 5.2 of this Article in the correct amount, and in a timely manner, shall be charged liquidated damages equal to a percentage set by the Trustees of the unpaid or late contributions. In addition thereto, such Contractor may be charged interest for each month (or week) during which such contributions remain unpaid. The Contractor shall also be charged for any reasonable attorney's fees and costs incurred by the Fund in collecting unpaid contributions. The Trustees shall have the authority to waive any liquidated damages, interest, attorney's fees and/or costs.

5.4 Each Contractor shall, when so required by the Trustees, furnish such information and reports as may be necessary to the proper performance of their duties. In addition, the Trustees shall have the right -- at reasonable times during business hours and upon advance notice -- to have a certified public accounting firm enter upon the premises of any Contractor and to examine such books, records, papers and reports of the Contractor as may be necessary in determining the number and names of Employees for whom contributions should be made to the Fund; the number of hours worked by any/all Employees for whom contributions should be made; and any other information necessary (including but not limited to cash disbursement journals) to the Trustees in performing their duties in accordance with the provisions of this Agreement.

5.5 In the event that the Trustees utilize legal counsel to aid them in securing compliance by any Contractor with the provisions of this Article, such Contractor shall be liable for all costs incurred, including, but not limited to, reasonable attorneys' fees. In the event an examination discloses that any Contractor during the period of the audit, has underpaid contributions, the Contractor shall also be liable for the costs for the examination. The Trustees shall have the authority, however, to waive all or part of such costs as well as interest and/or liquidated damages.

## ARTICLE VI
## RIGHTS OF PARTICIPANTS

6.1 Plan Benefits. Each Participant, and eligible dependent is entitled to the benefits provided by the Retiree Medical Plan, subject to the limitations set forth in this Trust and the Retiree Medical Plan. No Participant, or any other person shall be entitled to receive benefits under both the health plan for active employees and the Retiree Plan.

6.2 Limitation of Benefits. If the Trustees acquire a Group Insurance Contract or Contracts to provide the benefits set forth in the Retiree Medical Plan the right of each Participant, or any other person to the payment of any benefits is limited by the terms of any Group Insurance Contract or Contracts, it being the express intention of this Trust Agreement that any terms and conditions of any Group Insurance Contract or Contracts that vary or differ from the Retiree Medical Plan or Trust, be considered an amendment to the applicable Plan or Trust, and that the sole right of any Participant, or any other person to benefits under a Group Insurance Contract is the payment of the benefits provided for by the Group Insurance Contract or Contracts.

6.3 Interest in Trust Fund. No Participant, or any other person has any right, title, interest in or to the General Trust Funds, or any part thereof; however, any Participant who is covered by a Group Insurance Contract or Contracts, or his beneficiary, is entitled to benefits in the amount and subject to the terms and conditions of the Group Insurance Contract or Contracts. No Participant, or any other person has any right, title, or interest in, or the option to receive, any part of the Contractors' contributions. No Participant, or any other person has the right to assign his benefits or receive a cash consideration in lieu of his benefits.

6.4 Rights Subject to Amendment. No Participant, or other person has any vested rights under the Trust, the Retiree Medical Plan but the rights of each Participant and the status of any person as a Participant is subject to the rights of the Trustees to amend and terminate the Trust and the Retiree Medical Plan and to modify or eliminate benefits as hereinafter set forth.

6.5 Limitation of Legal Actions against the Retiree Medical Plan. Any legal action by a Participant, or dependent (or their representatives, agents, heirs, or assigns) to enforce a right to benefits under this Trust or the Retiree Medical Plan must be commenced within one year of the date the Participant, or dependent completes the administrative appeal of the benefit denial as stated in the Retiree Medical Plan. The situs of the Trust is Cook County, Illinois. Venue shall be in the United States District Court for the Northern District of Illinois. Any claims against the Trustees or their delegees involving a matter for which discretionary authority is given by this Trust Agreement shall be determined under the arbitrary and capricious standard of review.

6.6 Entitlement to Benefits. Participants, and dependents, if applicable, shall be entitled to receive benefits for a claim pursuant to the provisions of this Trust Agreement and the applicable plan to this Trust Agreement as such provisions exist on the date that the claim is incurred. A subsequent amendment of the Trust Agreement or applicable plan will not affect the entitlement of a Participant, dependent, if applicable, to benefits incurred prior to the effective date of such amendment. This Section 6.6 shall not prevent the Trustees from enacting an amendment with an effective date that applies retroactively.

## ARTICLE VII
## TRUSTEES AND SUCCESSOR TRUSTEES

7.1 Classification of Trustees. This Trust shall be administered by ten (10) Trustees. Five (5) of the Trustees shall be known as the "UNION TRUSTEES" and five (5) of the Trustees shall be known as the "CONTRACTOR TRUSTEES." Of the Contractor Trustees, three (3) appointed by the Plumbing Contractors Association Midwest, shall be known as "CHICAGO ASSOCIATION TRUSTEES," and two (2) appointed by the West Suburban Plumbing Contractors Association shall be known as "THE WEST SUBURBAN TRUSTEES." One Alternate Trustee appointed by the Union shall be known as a "UNION TRUSTEE," one Alternate Trustee appointed by the Plumbing Contractors Association Midwest shall be known as a "CHICAGO ASSOCIATION TRUSTEE," and one Alternate Trustee appointed by the West Suburban Plumbing Contractors Association shall be known

as a "WEST SUBURBAN TRUSTEE" with both Contractor Alternate Trustees being known as "CONTRACTOR TRUSTEES." Each Successor Trustee will have the same classification held by the Trustee who he replaces. The Trustees will serve, as the case may be, until his death, resignation, removal, or inability to act.

7.2 Resignation of Trustees. Any Trustee may resign by tendering his written resignation to the remaining Trustees.

7.3 Removal of Trustees. The Union, at any time, may remove a Union Trustee by serving written notice of removal upon the remaining Trustees. The Plumbing Contractors' Association of Chicago, at any time, may remove any Chicago Association Trustee by serving written notice of removal upon the remaining Trustees. The West Suburban Plumbing Contractors Association, at any time, may remove a West Suburban Trustee by serving written notice of removal upon the remaining Trustees.

7.4 Declaring Trustee Unable to Act. If any Trustee fails to attend three (3) consecutive meetings of the Trustees, the remaining Trustees may, in their discretion, declare the Trustee unable to act as Trustee, and, at that instant, a vacancy is created because of the Trustee's inability to act. The Trustees will promptly notify the proper person of the vacancy to permit the appointment of a Successor Trustee.

7.5 Appointment of Successor Trustee. In the event of the death, resignation, removal, or inability to act of a Union Trustee, the Business Manager of the Union may appoint a Successor Trustee to fill the vacancy that has been created. In the event of the death, resignation, removal, or inability to act of a Chicago Association Trustee, the President of the Plumbing Contractors' Association of Chicago may appoint a Successor Trustee to fill the vacancy that has been created. In the event of the death, resignation, removal, or inability to act of a West Suburban Trustee, the President of the West Suburban Plumbing Contractors Association may appoint a Successor Trustee to fill the vacancy that has been created. In each case, the Trustees will be notified in writing of the appointment of a Successor Trustee.

## ARTICLE VIII
## POWERS AND DUTIES OF TRUSTEES

8.1 General Control. Under this Trust Agreement, the Trustees have general supervision and control of the operation and administration of the Trust and the Retiree Medical Plan. To the extent permitted by law, the Trustees may delegate the fiduciary responsibilities relating to the operation and administration of the Trust and the Retiree Medical Plan among the Trustees or to any other person and, except as may be otherwise provided for by Section 405(c) of ERISA, the Trustees (other than those to whom a fiduciary responsibility has been so delegated) will not be liable or responsible for any act or omission of the person or persons delegated fiduciary responsibility. Specifically, but not in limitation of the foregoing general grant of powers, the Trustees shall have the following powers:

(a) all the powers and rights necessary or desirable for the proper administration of the Trust;

(b) with respect to the Trust they shall have all the rights and powers of a person having individual ownership of property, and may buy, sell, mortgage, pledge and convey, and otherwise acquire and dispose of, and contract with respect to, and sue and defend in any court of competent jurisdiction in any proceeding relating to any of the Trust property;

(c) the powers to enter into any and all contracts and agreements for the carrying out the terms of the Trust and the Retiree Medical Plan and for the administration of the Trust and the Retiree Medical Plan, and to do all acts as they, in their discretion, may deem necessary or advisable and such contracts, agreements, and acts shall be binding and conclusive upon the Union, the Employers, Participants, dependents, and any other interested parties;

(d) to furnish to any Contractor, sponsoring plumbing contractors' association, or to the Union, upon request, such supplemental reports with respect to the administration of this Plan as are determined to be reasonable and appropriate by the Trustees;

(e) do all acts, whether or not expressly authorized herein, which the Trustees deem necessary or proper for the protection of the Trust and their judgment shall be final; and

(f) to cause the Trust to be merged, consolidated or combined with, or into, another one or more multi-employer fund similarly created in accordance with any limitations as may be prescribed by applicable law.

8.2 Purchase of Group Contracts. The Trustees may, from time to time, in their discretion, purchase from any insurance company, one or more Group Insurance Contracts to provide the benefits under this Trust Agreement and the Retiree Medical Plan. Any Group Insurance Contract providing benefits different from those set out in the Trust and the Retiree Medical Plan is, to such extent, regarded as an amendment to the Trust and the Retiree Medical Plan.

8.3 Investment of the Separate Accounts. The Trustees have full power and authority to receive, collect, receipt for, hold, manage, and care for all amounts paid and contributed to the Trust Fund, including proceeds, income and profits on the contributed amounts, as a single fund, and to invest and reinvest all or a portion of the Trust assets in bonds, notes, conditional sales contracts, debentures, real estate, stocks and any other security or interest in income producing property as the Trustees deem advisable, provided that all investments will comply with the requirements of Section 404 of ERISA. The Trustees are further authorized and empowered to sell, exchange, convert, or transfer any property of the Trust; to retain un-invested for any time deemed in the best interest of the Trust any cash held in the Trust; to exercise or dispose of all rights accruing to the holders of any securities; and to

join in, by deposit, pledge, or otherwise any plan or reorganization or other means of protecting and dealing with securities. The Trustees are expressly authorized, in their discretion, to delegate the investment powers granted to them by this Trust Agreement to an investment manager if the investment manager meets all the requirements set forth in Section 3(38) of ERISA. If the Trustees delegate investment powers, the Trustees have no duty or obligation to supervise or control in any way the investments made and will in no way be liable or responsible on account of any investments made or retained by the investment manager, whether or not the investments are authorized by this Trust Agreement, or for any acts or omissions of the investment manager. Any bank designated as an investment manager under this Section 8.3 may invest all or a part of the assets under its management in deposits that bear a reasonable rate of interest, in accounts maintained in its own banking department, if the investment is permitted by Section 408(b) of ERISA.

8.4 Power to Borrow Money. The Trustees may, from time to time, borrow funds necessary to maintain any Group Insurance Contract held by the Trustees, or to carry out the purposes of this Trust, and may pledge all or a portion of the Trust property, as security, and execute notes or other instruments to evidence any indebtedness; provided, however, indebtedness will not constitute a personal obligation of the Trustees, the Union, or the Contributing Contractors, or any of them, but will be enforceable only against and satisfied only out of the Trust property.

8.5 Compensation for Services. The Trustees shall not receive any compensation for their services as Trustees unless otherwise permitted by ERISA, but shall be reimbursed, from the General Trust Fund, for reasonable out-of-pocket expenses incurred in connection with their duties as Trustees.

8.6 Employment of Agents and Payment of Expenses. The Trustees may employ employees, agents, accountants, actuaries and attorneys that are reasonably necessary to collect, manage, distribute and protect the Trust Fund and their compensation, as well as the reasonable and proper expenditures made by the Trustees in administering the Trust, may be paid out of the General Trust Funds.

8.7 Power to Collect Contributions. The Trustees are authorized to collect, demand, receive, and sue for contributions to the Trust due and payable from any Contributing Contractor under any agreement with the Union or among the Contractors.

8.8 Co-Chairmen and Secretary. The Board will have two Co-Chairmen, a Union Co-Chairman appointed by a majority vote of the Union Trustees and a Contractor Co-Chairman appointed by a majority vote of the Contractor Trustees, each to serve a two year term. The Co-Chairmen will alternately preside over meetings of the Trustees and may perform any ministerial duties that are delegated by the Trustees. The Trustees will elect a Secretary, who need not be a Trustee, to keep a complete and accurate record of all meetings of the Trustees, of all receipts and disbursements, and of all other matters pertaining to the administration of the Trust. The records maintained by the Secretary will be available for inspection by all of the Trustees during ordinary business hours. The Secretary is subject to removal by the majority vote of the Trustees at any time.

8.9 Meetings. The Trustees may hold regular meetings at a time determined, from time to time, by the Trustees and a special meeting of the Trustees may be called by either Co-Chairman or by any three (3) Trustees. No notice is required for regular meetings, but at least forty-eight (48) hours written notice will be given for any special meeting. Notice will be waived by any Trustee attending a meeting in person or by proxy unless he attends for the sole purpose of objecting to lack of proper notice and notice may be waived either before or after any meeting by a written waiver of notice.

8.10 Quorum and Manner of Acting. Seven (7) Trustees present in person, by proxy, or by Alternate Trustee, constitute a quorum for the purpose of holding a meeting and transacting business. A majority of members of a committee of Trustees present in person or by proxy constitute a quorum for the purpose of holding a committee meeting and transacting business of such committee.

Any Trustee may give a written proxy to another Trustee or to an Alternate Trustee of the same classification (e.g. Union Trustee or Contractor Trustee) to act on his behalf. A Trustee, or Alternate Trustee, in receipt of a proxy is entitled to act for the Trustee whose proxy he holds, in the same manner and with the same effect as the absent Trustee could act if present. If a Trustee is not present at any meeting of the Trustees and fails to designate a proxy, the Alternate Trustee of the same classification (e.g. Union Trustee or Contractor Trustee) if present, is authorized to act on behalf of the absent Trustee in the same manner and with the same effect as the absent Trustee could act if present. If more than one Trustee of the same classification is absent from the meeting, the Alternate Trustee of the same classification will act only for the absent Trustee with the shortest tenure as a Trustee.

Each Trustee is entitled to one vote on any matter considered by the Trustees and, except as otherwise provided in this Trust, all decisions and actions of the Trustees on the administration of the Trust, the exercise of the powers of the Trustees, the payment of benefits, and all matters germane to the administration of the Trust or Plan, including the making of rules and regulations, must be made at any meeting by the decision of at least a majority or more of such Trustees present in person or by proxy, and is binding upon all of the Trustees. Matters of an urgent nature pertaining to the administration of the Plan and Trust may be reviewed and voted on outside of a regular or special meeting by the Trustees by way of an email poll or a telephone conference after advanced notice of such matter is provided to the Trustees.

An Alternate Trustee has no power to act or vote on any matter unless designated to act under this Section but at all times has the authority to participate in discussions of Trust business conducted at any Trustee or subcommittee meeting. An Alternate Trustee is not counted in determining a quorum unless designated to act under this Section.

8.11 Rule Making and Interpretive Powers. The Trustees, or a designated committee thereof, have the power to adopt rules and regulations for the administration of the Trust and the Retiree Medical Plan; to interpret, construe, and apply the provisions of the Trust and the Retiree Medical Plan and any rules and regulations promulgated under the Trust or the Retiree

Medical Plan; and to make factual findings. All persons dealing with the Trust or claiming benefits are bound by the terms of the Trust, the Retiree Medical Plan, and any rules and regulations promulgated by the Trustees, or a designated committee thereof, any interpretation, construction, or application by the Trustees, or a designated committee thereof, of the terms of the Trust, the Retiree Medical Plan, or any rules or regulations, and any factual findings made by the Trustees, or a designated committee thereof.

Notwithstanding any provision to the contrary, benefits under the Retiree Medical Plan will be paid only if the Trustees, or a designated committee thereof, decide in their discretion that the applicant is entitled to them. The Trustees, or a designated committee thereof, shall have the exclusive right to interpret the provisions of the Trust, the Retiree Medical Plan, and to determine any questions arising hereunder or in connection with the administration of the Trust, the Retiree Medical Plan (including the remedying of any omission, inconsistency or ambiguity). The Trustees' decision, or the decision of the designated committee, or action in respect thereof shall be conclusive and binding upon any and all Participants, dependents or other interested parties.

For purposes of example and not of limitation, the Trustees, or a designated committee thereof, have the sole and exclusive right to determine, for purposes of the Trust, the Retiree Medical Plan whether any requested medical care, medical services, or medical supplies are medically necessary or reasonable; whether any requested medical care, medical services, or medical supplies are experimental or investigational; the reasonable and customary charge for any medical care, medical services, or medical supplies; whether an individual is sick or disabled for purposes of the Trust, the Retiree Medical Plan; and the meaning and application of any Plan or Trust provision requiring interpretation, including any ambiguous provisions. The Trustees, or a designated committee thereof, in exercise of their powers are authorized to fix omissions from any provision of the Retiree Medical Plan, the Trust, any rules and regulations, or any benefit communications.

8.12 Accounts and Records of Trustees. The Trustees will maintain books, records, and accounts to accurately disclose the condition of the Trust and General Trust Fund. The Trustees will have an annual audit of the Trust Fund made within a reasonable period of time after the close of each Plan Year by a firm of independent certified public accountants. The Trustees shall deliver a copy of each annual audit together with any report for that year as the Trustees may desire to make, to the Union, the Plumbing Contractors' Association Midwest, and the West Suburban Plumbing Contractors' Association, and will keep a copy of each audit and report on file at the office of the Trustees. The Trustees will keep a copy of the Minutes of their meetings on file at the office of the Trustees. The Trustees, at any time, may apply to a court of competent jurisdiction for the judicial approval of their accounts and only the Trustees are necessary parties to any legal action, and any judgment or decree entered is conclusive and binding upon all parties having or claiming to have an interest in the Trust or under the Retiree Medical Plan.

8.13 Effect of Trustees' Receipt. No person or corporation dealing with the Trustees is required to inquire into the terms of the Trust, or to see that they are complied with, and the

receipt of the Trustees is conclusive evidence of the discharge of the obligation for which the receipt is given. For these purposes, a canceled check is a receipt of the Trustees.

8.14 Powers of Successor Trustees. All Trustees, from time to time, acting hereunder have the powers, duties, and rights of the original Trustees named in this Trust.

8.15 Execution of Documents. Any application for a Group Insurance Contract, direction to an insurance company, or other instrument or document required to be executed by the Trustees in connection with the performance of their duties under this Trust will be executed by a Union Trustee and a Contractor Trustee, and no insurance company or other person has any obligation to inquire into the propriety of the action, but may conclusively assume that the action is authorized by the Trustees.

8.16 Reliance on Opinion of Counsel. To the extent permissible under ERISA and applicable law, the Trustees may rely upon all opinions given by legal counsel selected by the Trustees, and the opinion of counsel selected by the Trustees, is full and complete authority and protection for any action taken, suffered, or omitted by the Trustees in good faith based upon the opinion.

8.17 Limitation on Liability. To the extent permissible under ERISA and applicable law, the Trustees have no liability or responsibility for the form, genuineness, validity, sufficiency or effect of any Group Insurance Contract, or any other contract, certificate, or policy issued by an insurance company, or for the act of any person or persons rendering any contract, certificate, or policy void or unenforceable, for the failure of any insurance company to pay the proceeds, avails, and profits of any contract, certificate, or policy when due and payable, or for any delay occasioned by reason of any policy restriction or provision, or, if, for any reason whatsoever, any contract, certificate, or policy lapses or otherwise becomes uncollectible.

8.18 Indemnity of Trustees. The West Suburban Association of Plumbing Contractors, shall indemnify and save harmless from and against any or all liability the Contractor Trustees appointed by the West Suburban Association of Plumbing Contractors may be subjected to by reason of any act they, or any of them, may take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Plumbing Contractors' Association Midwest shall indemnify and save harmless from and against any or all liability the Contractor Trustees appointed by the Plumbing Contractors' Association Midwest may be subjected to by reason of any act they, or any of them, may take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Union indemnifies and saves harmless from and against any or all liability the Union Trustees, or any of them, may be subjected to by reason of any act they, or any of them, take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Trustees shall purchase insurance for the Trust and its Trustees to cover liability and otherwise indemnify Trustees in the event of claims against them; such insurance, however, shall not preclude recourse by the Trust in a case of a breach of fiduciary obligations.

Except in accordance with applicable federal law, no successor Trustee shall be personally liable for any act or omission of a predecessor Trustee nor shall any Trustee be personally liable for the payment, performance or discharge of any obligation, debt, contract or liability of the Trust. All contracts, debts, obligations and liabilities contracted or incurred by the Trustees in the proper discharge of their duties shall be paid and discharged by the Trust. Nothing in this instrument, however, shall exempt any Trustee from liability arising, by reason of his failure to discharge his duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; nor shall any Trustee be entitled to be indemnified by the Trust from any liability arising from such causes.

8.19 Deadlock. If there is a failure of a majority of the Trustees present, in person or by proxy, at a meeting where there is a quorum, to agree upon any matter relating to the administration of the Trust Fund, distribution of the Trust Fund, or any other matter relating to the Trust (including the adoption of rules and regulations, but excluding amendments to the Trust or the Retiree Medical Plan), within thirty (30) days after a vote on any subject matter was taken at a meeting of the Trustees, the Trustees will agree on an impartial umpire to decide the dispute. If the Trustees fail to appoint an impartial umpire within that thirty (30) day period, an impartial umpire will, on petition of any Trustee, be appointed by the Chief Judge of the United States District Court for the Northern District of Illinois, Eastern Division. The decision of the umpire selected or appointed is binding upon the Trustees and upon all interested parties or persons. The compensation of the umpire selected or appointed and all expenses incurred by him and by the Trustees, shall be paid by the Trustees out of the General Trust Fund.

8.20 Medical Consultant. The Trustees may retain one or more Medical Consultants to advise the Trustees and the Secretary on all matters of medical knowledge, and the Trustees are fully protected in relying upon and acting upon the advice of the Medical Consultant.

8.21 Claims Appeals. The Trustees shall have the power and authority to establish reasonable claims and appeals procedures should a participant or dependent wish to appeal a denied benefit claim under the terms of the Retiree Medical Plan. Participants and dependents are required to exhaust their administrative appeal procedures under the terms of the Retiree Medical Plan prior to filing any lawsuit or administrative claim against the Trust Fund. No lawsuit or administrative claim may be brought against the Trust Fund if it is not filed within one year from the date of receipt of the adverse benefit determination on appeal.

8.22 Field Representative. The Trustees may hire a Field Representative, who need not be a Trustee, who shall investigate the accuracy of contributions made to the Plan, cooperate with the Trustees and any committees, in obtaining information for the proper performance of his duties, and perform such other duties as may be assigned to him by the Trustees or any subcommittee. The Field Representative shall be subject to removal by the Trustees at any time.

## ARTICLE IX
## PROVISIONS RELATING TO INSURANCE COMPANIES AND GROUP INSURANCE CONTRACTS

9.1 Insurance Company Not Party to Trust. No insurance company or companies issuing any Group Insurance Contract or Contracts to the Trustees under this Agreement will be considered a party to this Trust, or any modification, amendment or supplement to this Trust. Nothing in this Trust, or in any modification, amendment, or supplement to this Trust, will in any way be construed to enlarge, change, vary, or in any way affect the obligations of any insurance company as expressly provided in any policy or contract issued by it.

9.2 Authority to Deal with Trustees. It is understood that any issuing insurance company may deal with the Trustees alone in accordance with the terms and conditions of any Group Insurance Contract or Contracts issued, and in the manner as the Trustees and the insurance company agree without the consent of any other person or persons interested in this Trust. No issuing insurance company is required to examine the provisions of this Trust or any modification, amendment, or supplement to the Trust. No issuing insurance company is responsible for the failure of the Trustees to perform their duties as such for the application or disposition of any money paid or to be paid to the Trustees; and any payment fully discharges the issuing insurance company for the amount paid.

9.3 Payment as Discharge. The payment or delivery of any money or contract, certificate, or policy issued by an insurance company in any settlement, whether made by the Trustees or directly by the insurance company, fully acquits and discharges the Trust and Trustees from all further liability under the Retiree Medical Plan.

## ARTICLE X
## CONTROVERSIES AND DISPUTES

10.1 Reliance on Record. In any controversy, claim, demand, suit of law, or other proceeding between the Trustees and any Participant, beneficiary, or other person, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, and any instruments on file with the Trustees, with the Union or with the Contractors, any facts certified to the Trustees by the Union or any Contractor, and any facts that are of public record, and any other evidence pertinent to the issue involved.

10.2 Submission to Trustees. All questions or controversies of any character arising between any parties or persons in connection with administration or operation of the Trust Fund including benefit claims made by any Participant, beneficiary, or any other person; questions concerning the construction, interpretation, or application of the language of the Retiree Medical Plan or the Trust, rules and regulations adopted by the Trustees, or any other writing, decision, or instrument; or any other act involving the operation or administration of the Trust Fund will be submitted to the Trustees for decision. The Trustees have the power and authority to take any and all actions and interpretations required to resolve all questions and controversies; including the power to make factual findings; to fix omissions in the Trust, the Retiree Medical Plan, any rules and regulations promulgated by the Trustees or any benefit

communications; to resolve ambiguities; and to construe the terms of the Trust, the Retiree Medical Plan, and any rules and regulations promulgated under the Trust and Plan. The Trustees shall have final authority and decision making ability to construe and interpret the terms of the Trust and Plan. All decisions, determinations, interpretations, and findings of the Trustees are binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

10.3 Compromises. The Trustees may, in their sole discretion, compromise or settle any claim or controversy in the manner they think best, and any decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, is conclusive and binding on all persons interested in this Trust.

## ARTICLE XI
## AMENDMENT AND TERMINATION

11.1 Right to Amend. The Trustees, by action of a majority of the Trustees present, in person or by proxy, at a meeting where a quorum exists, may amend or modify the Trust and the Retiree Medical Plan. Without, in any way, limiting the generality of this right, the Trustees may, by a duly adopted amendment, change the eligibility requirements for participation, modify or terminate the benefits provided for by the Retiree Medical Plan. Any amendment made by the Trustees will be made by a written instrument signed by a majority of the Trustees present and may be effective on any date prior to or following its execution. An amendment made to a Group Insurance Contract will be made by a resolution authorizing the action and approved by not less than a majority of the Trustees present.

11.2 Limitation on Amendments. The right of the Trustees to amend the Trust, and the Retiree Medical Plan is subject to the following limitations:

(a) No amendment will vest in any Contributing Contractor any interest in or control over any Group Insurance Contract or any other assets of the General Trust Fund.

(b) No amendment will divert any Group Insurance Contract or other assets of the General Trust Fund to purposes other than for the exclusive benefit of Participants and their beneficiaries.

11.3 Termination of Trust and Plan. The Union and the Contractors' Associations, together with the Trustees, at any time by written agreement, may terminate this Trust and the Retiree Medical Plan at any time, and cause the Trust and Retiree Medical Plan to be liquidated as provided in this Article. Until such time, this Trust will continue until all the assets of the General Trust have been applied or disbursed by the Trustees for the purposes of the Trust, the Retiree Medical Plan, namely, the health and welfare of those eligible to participate in the Trust and Plans, and until all assets have been expended or disbursed, the Trustees will continue to have and to exercise all the powers, rights, duties, and discretions

given to or imposed upon them by this Trust Agreement. When all the assets of the General Trust Fund are expended or disbursed, the Trust, the Retiree Medical Plan will terminate.

11.4 Distribution of Trust Upon Termination. Any distribution upon such liquidation of the Fund, or at any time thereafter, may be made, in whole or in part, to the extent that no diminution in value results, in cash, in securities, or in other assets in kind, or in insurance or annuity contracts, as the Trustees in their discretion may determine, having regard for the nature of the Fund. In making such distribution, any and all divisions, appraisals, apportionments, and allotments made by the Trustees and all actuarial determinations and evaluations made by the actuary employed by the Trustees shall be final and not subject to question by any Participant, retired Participant, or other person. The Trustees may affect such liquidation by the continuance or amendment of any existing trust or trusts or by the making of one or more new trust agreements or insurance company contracts or any combination thereof.

## ARTICLE XII
## SPENDTHRIFT CLAUSE

12.1 All proper benefit payments to Participants, dependents, or beneficiaries are, except as to persons under legal disability, paid to Participants, dependents, or beneficiaries in person and are not grantable, transferable, or otherwise assignable in anticipation of payment in whole or in part, by the voluntary or involuntary acts of any Participant, dependent, or beneficiary, or by operation of law, and are not liable or taken for any obligation or debt of the Participant, dependent, or beneficiary, including alimony; provided, however any benefit payable under the Retiree Medical Plan may, at the sole discretion of the Trustees, be paid directly to the individual or institution that provided the covered services. In any case, the payment will, for all purposes, be considered the same as a payment directly to the Participant, dependent, or beneficiary entitled to receive the payment.

12.2 No monies, property or equity of any nature whatsoever in the Trust or Trust Fund or policies or benefits or monies payable therefrom shall be subject in any manner, by any Participant or dependent, or person claiming through such Participant or dependent, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien, or charge and any attempt to cause the same to be subject thereto shall be null and void.

## ARTICLE XIII
## MISCELLANEOUS

13.1 No Refunds. Except as may be approved by the Trustees and permitted by Federal law, neither the Union nor any Contractor will receive, directly or indirectly, a refund of contributions made to the Trust, either directly or indirectly, participate in the distributions of the Trust Fund or receive any benefit from the Trust Fund. Upon transfer to the Trustees, the responsibilities of the Union and the Contributing Contractors for any contribution ceases, and the Union and the Contributing Contractors have no responsibility for the acts of the Trustees.

13.2 Withholding of Payments. If any question or dispute arises concerning the proper person or persons entitled to payments or benefits under the Trust or the Retiree Medical Plan, the Trustees may withhold payment until an adjudication of the question or dispute is made, satisfactory to the Trustees in their sole discretion, and the Trustees may require adequate and satisfactory indemnification against loss.

13.3 Reliance on Documents. To the extent permissible under ERISA and applicable law, the Trustees will incur no liability in acting upon any instrument, application, notice, request, signed letter, facsimile transmission, electronic transmission or other paper or document believed by them to be genuine and to contain a true statement of facts.

13.4 Liability of Trustees. To the extent permissible under ERISA and applicable law, the Trustees will incur no liability for any failure to collect (whether arising from failure to make demand or failure to take any steps or institute any proceedings) any sums due the Trust from any Contractor. No Trustee is liable for any act or default of any Co-Trustee, predecessor Trustee, the Union, or any Contractor. In the exercise of their discretionary powers, the Trustees may act solely upon their own best judgment upon the facts brought to their attention, without liability for errors of judgment and with complete immunity from liability for losses, damages, or liabilities sustained by the Trust, the Union, any Contractor, or by any Participant, or other person, to the extent permissible under ERISA and applicable law. The Fund shall purchase such fiduciary liability insurance as is permitted by law. The individual Trustees, in their sole discretion, may purchase such individual fiduciary liability insurance as they see fit.

13.5 Reporting, Withholding and Payment of Taxes. The Trustees, in those cases where alternative procedures are available for the reporting, withholding, or payment of any tax may select the procedure that is the least burdensome and least costly to the Trust.

13.6 Use of Last Address. Any money, checks, remittances, or things to be paid, disbursed or forwarded to any Participant, or beneficiary by the Trustees, whether directly or through an insurance company, may be mailed, postage prepaid, to such person at the address shown on the books of the Trustees, or if there is no such address, the last known address as shown on the records of the Union or the last employer. The Trustees are fully discharged in making payments under this provision and the risk of any loss is on the Participant, Former beneficiary, or his beneficiary.

13.7 Information Furnished by Union, Contributing Contractors and Participants. The Union, the Contributing Contractors, and each Participant must furnish the Trustees any information as they may, from time to time, request for the purpose of administering this Trust; the Trustees are entitled to rely conclusively on any information furnished or representations made by the Union, a Contributing Contractor or any Participant.

13.8 Not Employment Contract. Nothing in this Trust may be construed to constitute an employment contract between any Contractor and former employee.

13.9 Article and Section Titles. The Article and Section titles are included solely for convenience and will not be construed to affect or modify any provisions of this Agreement or be construed as part thereof.

13.10 Gender and Case. Where used in this Agreement, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural in all cases where these constructions would apply.

13.11 Construction. It is intended that this Trust Agreement, the Retiree Medical Plan, and any other plan of benefits established by the Trustees will comply with the provisions of ERISA and constitute a voluntary employees' beneficiary association under the provisions of Section 501(c)(9) of the Internal Revenue Code and, accordingly, the provisions of this Trust Agreement, the Retiree Medical Plan, and any other plan of benefits established by the Trustees will be construed and applied in a manner consistent with this intent. .

13.12 Legality of Certain Provisions. If any provision of this Trust Agreement is held illegal or invalid for any reason, the illegality or invalidity will not affect the remaining parts of the Trust or Plan created hereby; but this Trust Agreement will be construed and enforced as if the illegal and invalid provision was not inserted herein.

13.13 Notification by Participants and Beneficiaries. A Participant or Beneficiary, if applicable, is required to inform the Trustees of any change in the employment status or family status (including but not limited to divorce, legal separation), as well as their home address, that may affect the benefits of the Participant or Beneficiary, if applicable, to continue to participate in and receive benefits under any Plan which is a part of this Trust Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Restatement as Trustees of the TRUST AGREEMENT OF THE RETIREE MEDICAL PLAN OF THE PLUMBERS' WELFARE FUND, LOCAL 130, U.A., for the purpose of evidencing their unanimous consent to the Trust as amended and restated.

Executed in Chicago, Illinois this 10th day of MAY, 2017 to be effective January 1, 2017 and thereafter.

[signature page to follow]

**CONTRACTOR TRUSTEES**

David Ariano

~~Michael Chapel~~ Todd DeFranco

James O'Sullivan

Brian Burns

James Buckner

S.J. Peters (Alternate Trustee)

**UNION TRUSTEES**

James F. Coyne

Kenneth Turnquist

James Mansfield

William E. Matthies

Scott Spangle

Michael Shea (Alternate Trustee)

4821-2307-0531, v. 1

# 2021 Restatement of the Trust Agreement of the Plumbers' Retirement Savings Fund, Local 130, U.A.

## TABLE OF CONTENTS

**SECTION 1 DEFINITION OF TERMS** .......... 1

**SECTION 2 ESTABLISHMENT OF PLAN OF BENEFITS AND PURPOSE OF TRUST** .......... 3

**SECTION 3 ALLOCATION OF TRUST FUNDS** .......... 3

**SECTION 4 INVESTMENTS** .......... 4

**SECTION 5 DISPOSITION OF THE SEPARATE TRUST ACCOUNTS** .......... 5

**SECTION 6 SPENDTHRIFT TRUST** .......... 5

**SECTION 7 EMPLOYERS TO HAVE NO INTEREST IN TRUST** .......... 5

**SECTION 8 RETIREMENT BENEFIT TRUSTEES** .......... 6

**SECTION 9 ADMINISTRATION OF THE TRUST** .......... 7

**SECTION 10 AMENDMENT AND TERMINATION OF THE TRUST** .......... 12

**SECTION 11 CONTRIBUTIONS TO THE FUND** .......... 13

**SECTION 12 MISCELLANEOUS** .......... 15

# 2021 RESTATEMENT OF THE TRUST AGREEMENT OF THE PLUMBERS RETIREMENT SAVINGS FUNDLOCAL 130, U.A.

WHEREAS, through collective bargaining, the Chicago Journeymen Plumbers' Association, Local Union No. 130, of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, the Plumbing Contractors Association of Greater Chicago, the Kankakee & Iroquois Counties Plumbing & Piping Contractors Association, and the West Suburban Association of Plumbing Contractors have determined that in order to provide benefits to employees in conformity with applicable law, it is appropriate to restate the Trust Agreement for the Plumbers' Retirement Savings Fund, Local 130, U.A. which provides defined contribution retirement benefits through the Plan Document of the Plumbers' Retirement Savings Fund, Local 130, U.A., for current employees, retirees, and beneficiaries;

WHEREAS, the undersigned are Trustees of the Plumbers' Retirement Savings Fund, Local 130, U.A., created by a Trust Agreement ("Trust" or "Agreement") originally dated September 1, 1998, which has been amended from time to time;

WHEREAS, under Section 10.01 of the Trust Agreement, the undersigned are authorized to amend the Trust;

WHEREAS, the Trustees wish to now restate the Trust of the Plumbers' Retirement Savings Fund, Local 130, U.A., effective January 1, 2021;

NOW, THEREFORE, the Trust of the Plumbers' Retirement Savings Fund, Local 130, U.A. is amended and restated to read as follows:

## SECTION 1
## DEFINITION OF TERMS

Unless the context clearly indicates otherwise, the following definitions apply:

1.01 "Beneficiaries" means persons designated by the Participant to receive his share of any property of the Trust in case of the Participant's death.

1.02 "Contractor" means those individuals, corporations, partnerships, firms, or associations who are regarded as Plumbing Contractors and are legitimately so engaged in the geographic jurisdiction of the Union under the customs and usage of the trade, except that the Union is regarded as a Contractor for the purpose of determining the eligibility for participation in this Trust of its full-time employees by way of a participation agreement, and any other employer, employing employees within a bargaining unit represented by the Union, is regarded as a Contractor for the sole purpose of this Trust, if the employer files an application with the Trustees and the application is approved by the Trustees. The Trustees have the unqualified right to reject the application for participation of any employer who is not a Contractor under the customs and usage of the trade, and their decision on any employer application is final and binding.

1.03 "Contributor" means any employer, other than a Contractor employing journeymen and apprentices in the plumbing trade in the geographical jurisdiction of the Union, who performs solely maintenance work in a bargaining unit represented by the Union, but only if the Retirement Benefit Trustees approve the employer's application to contribute. The Plumbers' Welfare Fund, Local 130, U.A., the Plumbers' Pension Fund, Local 130, U.A., and the Plumbers' Joint Apprenticeship Committee, Local 130, U.A., are also Contributors for purposes of this paragraph and participate by way of a written participation agreement. The Retirement Benefit Trustees have the unqualified right to reject the application of any employer who is not a Contractor under the customs and usage of the trade, and their decision is final and binding. No employer can contribute to the Retirement Fund on behalf of his employees unless the Employer is a Contractor, or, if not a Contractor, if his application for participation was approved under this Section.

1.04 "ERISA" the Employee Retirement Income Security Act of 1974, as from time to time amended.

1.05 "IRC or Code" means the Internal Revenue Code of 1986, as from time to time amended.

1.06 "Participant" means an employee of a Contractor or Contributor for whom the Contractor or Contributor is required to make contributions to this Trust under its agreement with the Union or other written participation agreement who is eligible to participate under the terms of this Plan. It includes full-time employees of the Union and for whom the Union makes contributions.

1.07 "Plan" means the Plumbers' Retirement Savings Fund, Local 130, U.A. and the related plan document.

1.08 "Plan Year" means the annual accounting period used by the Trust ending on the last day of December of each year.

1.09 "Plumbing Contractors' Associations" means the PLUMBING CONTRACTORS' ASSOCIATION OF GREATER CHICAGO, the WEST SUBURBAN ASSOCIATION OF PLUMBING CONTRACTORS (previously known as the WEST SUBURBAN MASTER PLUMBERS' ASSOCIATION) and the KANKAKEE & IROQUOIS COUNTIES PLUMBING & PIPING CONTRACTORS ASSOCIATION.

1.10 "Retirement Benefit Trustees" or "Trustees" means the individuals originally named herein and their successors appointed under the terms of this Agreement. The term "Retirement Benefit Trustees" also refers to Alternate Retirement Benefit Trustees when the Alternate Trustees are authorized to act in the manner described under this Agreement. The Retirement Benefit Trustees in their collective capacities are known as the "RETIREMENT BENEFIT TRUSTEES OF THE CHICAGO JOURNEYMEN PLUMBERS' UNION, LOCAL 130, U.A." and may conduct the business of the Plan and execute all instruments in that name. The Retirement Benefit Trustees are designated as the administrator, plan administrator, and named fiduciary of this Plan for purposes of ERISA.

1.11 "Union" means the CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, or in the case of a dissolution or disaffiliation of Union, or in the event that Union at any time ceases to be the representative of the majority of the employees in the plumbing trade of the employers contributing to the Retirement Fund, any successor to the Union which represents the majority of the employees in the plumbing trade of the employers contributing to the Retirement Fund. Where appropriate, it also refers to any other labor organization which has consolidated with or merged with the Union.

## SECTION 2
## ESTABLISHMENT OF PLAN OF BENEFITS AND PURPOSE OF TRUST

2.01 The Trustees shall have the power to formulate and design a plan(s) for the payment of such retirement and disability benefits, as they, in their sole discretion, shall determine. The Plan, known as the Plumbers' Retirement Savings Fund, Local 130, U.A., shall at all times conform to the applicable sections of the Internal Revenue Code of 1986, as amended ("Code"), for purposes of tax exemption and this Trust Agreement. The Trustees may adopt procedures, regulations and conditions for the operation of the Plan, including, by way of illustration and not limitation: conditions of eligibility for covered Employees, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits; provided, however, that all such rules and regulations adopted by the Trustees shall be general in their application and no special or particular treatment shall be accorded to any individual.

2.02 The Trustees may consult with or employ such legal, actuarial, administrative, and other experts as they deem necessary for the proper formulation and operation of the Plan.

2.03 The Plan may be amended by the Trustees from time to time, provided that such amendments shall comply with the applicable sections of the Code and this Trust Agreement.

2.04 The primary purpose of the Trust is to provide retirement benefits set forth in the Plan. The general purpose of the Trust is to provide, in accordance with amendments to the Plan and Trust adopted from time to time by the Trustees, any additional benefits permitted by law as, in the opinion of the Trustees, the Trust may permit.

## SECTION 3
## ALLOCATION OF TRUST FUNDS

3.01 Participant's Account. The Trustees shall maintain a separate account in the name of each Participant.

3.03 Records and Accounting. Books of account, forms, and accounting methods used in the administration of the Trust fund are subject in all respects to the supervision of the Trustees, and if at any time the Trustees determine that the accounting methods are not fair and equitable to all Participants, the Trustees have the right to make whatever adjustments are necessary in the accounting methods to carry out the intent of the Trust. If an erroneous amount is posted to a Participant's account for any year, the Trustees may, for the year the error is discovered, correct the error by making the adjustments in allocating contributions, forfeitures, and earnings and

valuation adjustments for the year among the then Participants who were Plan Participants at the time the error was made as they may deem error was made. The Trustees will furnish each Participant a record of his account.

3.04 Designation of Beneficiary. Except as otherwise provided herein, each Participant has the right to designate the Beneficiary or Beneficiaries entitled to receive any amount or benefit in case of the Participant's death and has the right at any time before final distribution of his account to change a prior Beneficiary designation by filing a new designation. A new designation completely revokes and supersedes any prior designation by the same Participant. All designations must be in writing on a form designated by the Trustees. The Trustees shall make settlement hereunder at the time of the Participant's death with the Beneficiary or Beneficiaries.

## SECTION 4
## INVESTMENTS

4.01 Investment of the Separate Accounts. The Trustees shall have full power and authority to receive, collect, receipt for, hold, manage, and care for all amounts paid and contributed to the trust fund, and the proceeds thereof and the income and profits therefrom, as a single fund, and to invest and reinvest the same or any part thereof in Contracts, bonds, notes, conditional sales contracts, debentures, real estate, stocks and any other security or interest in income-producing property as the Trustees feel advisable, provided that all investments shall comply with the applicable requirements of ERISA. The Trustees are further authorized and empowered to sell, exchange, convert, or transfer any property of the Trust; to retain uninvested for such time as they deem for the best interest of the Trust any cash held in the Trust; to exercise or dispose of all rights accruing to the holders of any securities; to join in, by deposit, pledge, or otherwise, any plan of reorganization or other means of protecting and dealing with securities; and to compromise, adjust, and settle, all claims of or against the Trust on terms as they feel advisable.

4.02 Investments Not Allocated to Separate Accounts. All right, title, and interest in and to the assets and investments of the Trust is vested in, and resides exclusively in the Trustees, and no Participant has any right, title, or interest in or to the assets or investments of the Trust except to have the assets held, invested, and applied in accordance with the provisions of this agreement. The maintenance of separate accounts for each Participant does not require the allocation of or segregation of assets to each separate account, but the creation of the accounts is primarily for accounting purposes.

4.03 Delegation of Investment Powers. The Trustees are hereby expressly authorized, in their discretion, to delegate the investment powers granted to them by this agreement to an investment manager if the investment manager meets all the requirements set forth in Section 3(38) of ERISA. If the Trustees delegate their investment powers, the Trustees shall have no duty or obligation to supervise or control in any way the investments made and are not liable or responsible on account of any investments made or retained by the investment manager, whether or not the investments are authorized by this Agreement, or for any acts or omissions of the investment manager. Any action of the Retirement Benefit Trustees under this Section requires the concurrence of not less than three Contractor Trustees and three Union Trustees.

4.04 Investment by Insurance Company. If the Trustees deposit assets of the Trust with an insurance company under an agreement under which the deposits are invested by the insurance company without the issuance of a Contract on the life of a particular Participant (sometimes known as a deposit administration contract or a pension administration contract) and the agreement is a guaranteed benefit policy as defined in Section 401(b)(2)(B) of ERISA, the agreement will be treated as an asset of the Trust held by the Trustees. If the agreement is not a guaranteed benefit policy, the issuing insurance company is treated as an investment manager holding and investing Plan assets as defined under ERISA and Section 4.03.

4.05 Investment Accounts. Notwithstanding sections herein to the contrary, deposits to the Plan and earnings shall be invested as directed by each Participant or Beneficiary in one or more of the investment options provided under the Plan.

4.06 Investment Options. Each Participant shall designate the investment option for his account. Investment options may be added or eliminated at any time at the Trustees' sole and complete discretion. The Trustees shall adopt rules and procedures as they deem advisable with respect to all matters relating to the selection and use of the investment funds, provided that all Participants are treated uniformly.

## SECTION 5
## DISPOSITION OF THE SEPARATE TRUST ACCOUNTS

Distributions of the individual accounts of Participants shall be administered and governed in accordance with the terms of the Plan._Earnings and valuation adjustments shall be made in accordance with the terms of the Plan.

## SECTION 6
## SPENDTHRIFT TRUST

Except for (i) a qualified domestic relations order (as defined in Section 414(p) of the IRC), or (ii) any offset permitted due to a conviction of a crime involving this Plan or due to a civil judgment or settlement arising out of a breach of fiduciary duty under ERISA as permitted under Section 206(d)(4) of ERISA, none of the benefits, payments, proceeds, claims or rights of any Participant or Beneficiary are subject to any claim of any creditor of any Participant or Beneficiary, or subject to attachment, garnishment or other legal process for the payment of any debts, judgments, alimony or separate maintenance owed by any Participant or any Beneficiary, nor shall the Participant or Beneficiary have any right to alienate, anticipate, pledge, encumber, or assign any of the benefits or payments or proceeds which he may expect to receive, contingently or otherwise, under this Plan.

## SECTION 7
## EMPLOYERS TO HAVE NO INTEREST IN TRUST

No Contractor or Contributor shall in any event, either directly or indirectly, receive any refund of contributions made by it to the Trust, nor directly or indirectly participate in the distribution, or receive the benefits of, the assets or funds comprising the trust estate. Upon transfer to the Trustees, all responsibilities of a Contractor or Contributor for each contribution shall cease, and the Company shall have no responsibilities for the acts of the Trustees. Notwithstanding the

first sentence of this Section, a refund may be made to the Company, subject to the limitations imposed by Rev. Rul. 91-4, if a contribution is made by a mistake of fact or a deduction for federal income taxes is disallowed for any portion of a contribution and the mistaken contribution or the nondeductible portion of the contribution is returned one year after payment of the mistaken contribution or within one year after the disallowance of the deduction.

## SECTION 8
## RETIREMENT BENEFIT TRUSTEES

8.01 Retirement Benefit Trustees and Term of Office. This Trust shall be administered by ten (10) Retirement Benefit Trustees and two (2) Alternate Retirement Benefit Trustees who shall be "named fiduciaries" within the meaning of Section 402(a)(2) of ERISA. Each Retirement Benefit Trustee and each successor Retirement Benefit Trustee shall serve until his death, resignation, removal, inability to act or the expiration of his term of office; provided, however, any Retirement Benefit Trustee whose term of office expires shall continue to serve as Retirement Benefit Trustee hereunder until his successor has been duly appointed and qualified.

8.02 Classification of Retirement Benefit Trustees. Five of the RETIREMENT BENEFIT TRUSTEES shall be known as the "UNION TRUSTEES," and five of the RETIREMENT BENEFIT TRUSTEES shall be known as the "CONTRACTOR TRUSTEES." Of the CONTRACTOR TRUSTEES, four shall be known as the "PLUMBING CONTRACTORS ASSOCIATION OF GREATER CHICAGO TRUSTEES", one shall be known as the "WEST SUBURBAN ASSOCIATION OF PLUMBING CONTRACTORS TRUSTEE," There shall be two Alternate Trustees, one (1) ALTERNATE UNION TRUSTEE appointed by the Union and one (1) ALTERNATE CONTRACTOR TRUSTEE. The ALTERNATE CONTRACTOR TRUSTEE shall be appointed by the Plumbing Contractors Association of Greater Chicago. Each successor RETIREMENT BENEFIT TRUSTEE shall have the same classification as that held by the RETIREMENT BENEFIT TRUSTEE whom he has replaced.

8.03 Resignation of Retirement Benefit Trustee. Any Retirement Benefit Trustee may resign by tendering his written resignation to the Retirement Benefit Trustees and the organization which has appointed him.

8.04 Removal of Retirement Benefit Trustee. Any Retirement Benefit Trustee may be removed at any time with or without cause, by the organization which has appointed such Trustee.

8.05 Declaring Retirement Benefit Trustee Unable To Act. In the event any Retirement Benefit Trustee fails to attend three consecutive meetings of the Retirement Benefit Trustees, the remaining Retirement Benefit Trustees may, in their discretion, declare said Retirement Benefit Trustee unable to act as Retirement Benefit Trustee and, thereupon, a vacancy shall be created because of said Retirement Benefit Trustee's inability to act. The Retirement Benefit Trustees shall promptly notify the proper organization of such vacancy so that a successor Retirement Benefit Trustee can be appointed as hereinafter provided.

8.06 Appointment of Successor Retirement Benefit Trustee. Upon the expiration of the term of office, or in the event of the death, resignation, removal or inability to act of a Retirement

Benefit Trustee, a successor Retirement Benefit Trustee shall be appointed by the organization that appointed the Retirement Benefit Trustee whose office is vacant.

## SECTION 9
## ADMINISTRATION OF THE TRUST

9.01 Meetings. The Retirement Benefit Trustees shall hold regular meetings at times established by the Retirement Benefit Trustees. Special meetings of the Retirement Benefit Trustees may be called by either Co-Chairman or by any three (3) of the Retirement Benefit Trustees. No notice is required for regular meetings, but at least forty-eight (48) hours written notice is given for any special meeting. Notice is waived by any Retirement Benefit Trustee attending a meeting in person, unless he attends for the sole purpose of objecting to lack of proper notice, and may be waived either before or after any meeting by a written waiver of notice. The Retirement Benefit Trustees may also participate in any act at any meeting of the Board of Trustees through the use of a conference telephone, video conferencing or other communication equipment by means of which all persons participating in the meeting can hear each other. Participation in such a meeting in such a manner shall constitute attendance and such presence of persons at the meeting of the person or persons so participating. Matters of an urgent nature pertaining to the administration of the Plan and Trust may be reviewed and voted on outside of a regular or special meeting by the Trustees by way of an email poll or a telephone conference after advanced notice of such matter is provided to the Trustees and so long as the approval requirements set forth in this Trust and the Plan are followed.

9.02 Quorum and Manner of Acting. Six (6) Trustees (three Union and three Contractor Trustees) present in person or by Alternate Trustee, constitute a quorum for the purpose of holding a meeting and transacting business. A majority of members of a committee of Trustees present in person or by proxy constitute a quorum for the purpose of holding a committee meeting and transacting business of such committee. All decisions and actions of the Retirement Benefit Trustees pertaining to the construction or administration of the Plan, the exercise of Retirement Benefit Trustees powers, the payment of benefits, and all other Plan administration matters require the concurring votes of at least three (3) Union Trustees and at least three (3) Contractor Trustees, in person, by proxy, or by Alternate Trustee. All approved decisions or actions are final and binding upon the Plumbing Contractors' Association, the Contractors, the Contributors, the Union, the Participants, and any other persons interested in the Plan. Any Union Trustee may give a written proxy to another Union Trustee of his choosing or to the Union Alternate Trustee.

Any Contractor Trustee may give a written proxy to another Contractor Trustee of his choosing or to the Contractor Alternate Trustee. If a Trustee is not present at any regular or special meeting, the Alternate Trustee of the same classification (e.g. Union Trustee or Contractor Trustee) shall be authorized to act for the absent Trustee. If two or more Trustees of the same classification are absent from the meeting and have not properly designated a proxy, the Alternate Trustee acts for the absent Trustee with the shortest tenure as a Trustee. A Trustee in receipt of a proxy is entitled to act for the Retirement Benefit Trustee whose proxy he holds, in the same manner and with the same effect as the Retirement Benefit Trustee could act if present. An Alternate Trustee in receipt of a proxy or authorized to act because of the absence of a Retirement Benefit Trustee is entitled to act for the absent Retirement Benefit Trustee in the same manner and with the same effect as the Retirement Benefit Trustee could act if present. Without limiting the generality of the

foregoing, any Trustee holding a proxy from another Retirement Benefit Trustee may execute any amendment or other document for and on behalf of the Retirement Benefit Trustee whose proxy he holds, or in the case of an Alternate Trustee, the Retirement Benefit Trustee whose absence allows the Alternate Trustee to act.

9.03 Deadlocks. If the concurring votes of at least three (3) Contractor Trustees and three (3) Union Trustees are not cast on any matter relating to the administration of this Plan, the party proposing action on the matter may declare it deadlocked. Within fifteen (15) days after the deadlock is decided, the Retirement Benefit Trustees will agree, in the manner indicated in Section 9.02, on an impartial umpire to decide the deadlocked matter. If the Trustees fail to agree, any Retirement Benefit Trustee may petition the Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division to appoint an impartial umpire. The decision of the umpire is binding on the Union, the Plumbing Contractors' Associations, the Contractors and any Participant or other person involved. The impartial umpire has no power to amend or modify this Plan. The compensation of the umpire including properly incurred expenses may be paid out of the Retirement Fund.

9.04 Powers and Duties of the Retirement Benefit Trustees. The Retirement Benefit Trustees in their administration of this Plan have the following powers and functions:

(a) To organize for the conduct of their affairs by the election of two Co-Chairmen, one Union Trustee appointed by a majority vote of the Union Trustees and one Contractor Trustee appointed by a majority vote of the Contractor Trustees, who will preside alternately over the Retirement Benefit Trustee meetings.

(b) To contract with a third-party administrator, recordkeeper, and Corporate Trustee to administer the Retirement Fund in addition to the Fund Office.

(c) To prescribe benefit application procedures for Participants and for furnishing any evidence of age and service, or any other necessary data necessary to establish a right to Plan benefits.

(d) To obtain from Contractors, Contributors, the Union, and from any Participant, information necessary to properly administer the Plan, and to have an audit made by an independent certified public accountant or by their duly authorized representative of all relevant financial, payroll and other records of any Contractor or Contributor to determine that the employer has fully complied with its obligation report and contribute to the Retirement Fund.

(e) To determine the rights and eligibility of Participants and Beneficiaries, applying for any benefit under the Plan, according to the terms of the Plan and to make factual findings. Any determination, interpretation, construction, or factual finding adopted by the Trustees is final and binding on all persons dealing with the Plan or claiming any Plan benefit.

(f) To designate a physician or physicians or clinic or clinics to examine Participants to determine the existence of permanent disability as necessary.

(g) To authorize and pay benefits to eligible persons and administrative expenses of the Plan.

(h) To prepare and distribute, in any manner determined by the Retirement Benefit Trustees, appropriate information explaining the Plan.

(i) To furnish to any Contractor, the Plumbing Contractors' Associations, or to the Union, upon request, reasonable reports concerning the administration of this Plan that are considered reasonable and appropriate by the Retirement Benefit Trustees. The Union is entitled to a copy of the "Report of Contribution" made by each Contractor and Contributor. Copies of contribution reports will not be furnished to any Contractor, Contributor, the Plumbing Contractors' Associations, or any other person unless the release of the Report is expressly authorized by the Retirement Benefit Trustees.

(j) To solicit, collect, receive, and sue for contributions to the Retirement Fund due and payable from any Contractor or Contributor and to keep records of all contributions.

(k) To employ employees, agents, accountants, consultants, actuaries and attorneys necessary to administer the Plan.

(l) To make reasonable payments out of the Retirement Fund for expenses of development and administration of the Plan, including expenses of operation of the Fund office.

(m) To the extent permitted by law, the Retirement Benefit Trustees may delegate their fiduciary responsibilities among the Retirement Benefit Trustees or to any other person and, except as may be otherwise provided for by Section 405(c) of ERISA, the Retirement Benefit Trustees (other than those to whom a fiduciary responsibility is delegated) are not liable or responsible for any act or omission of the person or persons delegated the fiduciary responsibility.

(n) To have all the powers and rights necessary or desirable for the proper administration of the Plan and Trust.

(o) To enter into any and all contracts and agreements for the carrying out the terms of the Trust and the Plan and for the administration of the Trust and the Plan, and to do all acts as they, in their discretion, may deem necessary or advisable and such contracts, agreements, and acts shall be binding and conclusive upon the Union, Contractors, Contributors, Participants, Beneficiaries, and any other interested parties.

(p) To correct errors and make equitable adjustments for mistakes made in the administration of the Plan or calculation of benefits; specifically, and without limitation, to recover erroneous overpayments made from the Plan to a Participant or Beneficiary, in whatever manner the Plan Administrator determines is appropriate, including recoupment of past payments, or offsets against, future payments due that Participant or Beneficiary.

(q) To cause the Trust to be merged, consolidated or combined with, or into, another one or more multiemployer fund similarly created in accordance with any limitations as may be prescribed by applicable law.

(r) To provide for fidelity bonds, in such amounts as legally necessary, the cost of which shall be paid by the Trust. The Trustees may purchase insurance coverage to protect the Fund from liability arising out of any error or omission of any Trustee or employee of the Trust, in accordance with applicable law, the cost of which policy shall be paid by the Fund.

(s) To invest or reinvest all or a portion of the Retirement Fund assets in contracts, stocks, bonds, notes, debentures, real estate, and any other security or interest in income producing property as the Retirement Benefit Trustees may deem advisable, provided that all investments comply with the requirements of Section 404 of ERISA. The Retirement Benefit Trustees are further authorized and empowered to sell, exchange, convert, or transfer any property of the Retirement Fund; to retain uninvested cash as required for such time as for the best interests of the Retirement Fund; to exercise or dispose of all rights accruing to the holders of any securities; to join in, by deposit, pledge, or otherwise, any plan of reorganization or other means of protecting and dealing with securities; or to authorize the Retirement Fund Trustee or any investment manager to invest all or a part of the Retirement Fund assets in any common, collective, or commingled trust fund or pooled investment fund qualified under IRC Section 401(a) and entitled to tax exemption under IRC Section 501(a), and to the extent Retirement Fund assets are invested in any common, collective or commingled trust fund or pooled investment fund, the provisions of the documents under which that fund is maintained govern any investment and are hereby incorporated herein and made a part of this Plan. The Retirement Benefit Trustees are further authorized to delegate their investment responsibilities with respect to assets of the Retirement Fund and designate the Retirement Fund Trustee and/or one or more investment manages to manage all or a portion of the Retirement Fund assets. Upon any designation, the Retirement Fund Trustee and each designated investment manager has complete fiduciary responsibility for the custody, management and investment of the Plan assets for which investment responsibility is delegated, and the Retirement Benefit Trustees have no fiduciary responsibility or duty with respect to any delegated assets or the right to instruct the Retirement Fund Trustees or any investment manager concerning the custody, management, or investment of the delegated amounts.

9.05 Compensation of Retirement Benefit Trustees. The Retirement Benefit Trustees cannot be compensated for administering this Trust, but may be reimbursed for expenses properly and actually incurred. All ordinary expenses incurred in administration of this Trust may be paid from this Trust.

9.06 Field Representative. The Fund Office shall keep a complete and accurate record of all meetings of the Retirement Benefit Trustees, of all receipts and disbursements, and of all Plan matters. The records shall be available for inspection by all of the Retirement Benefit Trustees during ordinary business hours at the Fund Office. The Retirement Benefit Trustees shall also utilize a Field Representative, who need not be a Trustee, who shall investigate the accuracy of contributions made to the Plan, cooperate with the Fund Office in obtaining information required for the proper performance of his duties, and perform other duties as are assigned to him by the Retirement Benefit Trustees. The Field Representative is subject to removal by the Retirement Benefit Trustees at any time.

9.07 Reliance on Opinion of Counsel. The Retirement Benefit Trustees may rely upon all opinions given by their selected legal counsel, and the opinion of counsel is full and complete authority and protection for any good faith action taken, suffered, or omitted by the Retirement Benefit Trustees.

9.08 Reliance on Record. In any controversy, claim, demand, suit of law, or other proceeding between any Participant, former Participant, or any other person and the Retirement Benefit Trustees, the Retirement Benefit Trustees may rely upon any facts appearing in the records of the Retirement Benefit Trustees, any instruments on file with the Retirement Benefit Trustees, with the Union, or with a Contractor or Contributor, any facts certified to the Trustees by the Union or any Contractor or Contributor, and any relevant facts which are of public record

9.09 Compromises. The Retirement Benefit Trustees may, in their sole discretion, compromise, settle, arbitrate, adjust, or release any claim, controversy, debt, damage, or undertaking upon any terms and conditions and in any manner as the Retirement Benefit Trustees feel is advisable and in the best interest of the Retirement Fund.

9.10 Submission to Trustees. All questions or controversies of any character arising between any parties or persons in connection with administration or operation of the Trust Fund including benefit claims made by any Participant, beneficiary, or any other person; questions concerning the construction, interpretation, or application of the language of the Plan or the Trust, rules and regulations adopted by the Trustees, or any other writing, decision, or instrument; or any other act involving the operation or administration of the Trust Fund will be submitted to the Trustees for decision. The Trustees have the power and authority to take any and all actions and interpretations required to resolve all questions and controversies; including the power to make factual findings; to fix omissions in the Trust, the Plan, any rules and regulations promulgated by the Trustees or any benefit communications; to resolve ambiguities; and to construe the terms of the Trust, the Plan, and any rules and regulations promulgated under the Trust and Plan. The Trustees shall have final authority and decision making ability to construe and interpret the terms of the Trust and Plan. All decisions, determinations, interpretations, and findings of the Trustees are binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

9.11 Prior Acts. No Trustee shall be liable for any acts occurring prior to the period of time during which the Trustee was actually serving in such capacity with respect to the Plan.

9.12 General Fiduciary Standard of Conduct. Each Trustee shall discharge his duties hereunder solely in the interest of the Participants and their Beneficiaries and for the exclusive purposes of providing Benefits to Participants and their Beneficiaries and defraying reasonable expenses of administering the Plan. Each Trustee shall act with the care, skill, prudence and diligence under the circumstances that a prudent man, acting in a like capacity and familiar with such matters, would use in conducting an enterprise of like character and with like aims, in accordance with the documents and instruments governing the Plan, insofar as such documents and instruments are consistent with this standard.

## SECTION 10
## AMENDMENT AND TERMINATION OF THE TRUST

10.01 Amendments Not Increasing Cost. Any Amendment not increasing the cost of the Plan may be made by the unanimous consent of the Retirement Benefit Trustees. Any Amendment made by the Retirement Benefit Trustees shall be made by a written instrument signed by all of the Retirement Benefit Trustees and may be effective as of any date before or after its execution date.

10.02 Amendments Increasing Cost. Any Amendment increasing Plan costs shall be made only after the Amendment is unanimously adopted by the Retirement Benefit Trustees.

10.03 When Amendment Increases Cost. If a majority of Retirement Benefit Trustees cannot agree upon whether a proposed amendment increases Plan costs, the Trustees may employ an Actuary or consultant to determine whether or not an Amendment will increase the Plan cost and the determination will be conclusive and binding upon all parties concerned.

10.04 Limitation on Amendments. The right to amend this Plan is subject to the following limitations:

(a) No Amendment shall have the effect of vesting in any Contractor or Contributor any interest in or control over the Retirement Fund.

(b) No Amendment shall have the effect of diverting any assets of the Retirement Fund to purposes other than for the exclusive benefit of Participants and Retired Participants, except that provision for reasonable compensation for the Retirement Benefit Trustees may be made by an amendment to this Plan.

10.05 Termination of the Trust and Disposition Upon Such Termination. Unless otherwise terminated as hereinafter provided in paragraphs (a) and (b) below, this Trust shall continue in perpetuity or for such time as may be necessary to accomplish the purpose for which it is created. This Trust terminates upon the happening of any of the following:

(a) Election by Trustees. The Trustees may elect to terminate this Trust.

(b) Termination or Modification of Collective Bargaining Agreement Requiring Contributions to this Trust By Any Employer. If this Trust is terminated, any unallocated contribution, forfeitures, or earnings and valuation adjustments of the trust fund shall be allocated and distributed to Participants in the manner provided in this agreement and the Plan. Upon the completion of all payments to everyone entitled thereto, this Trust will cease and terminate.

## SECTION 11
## CONTRIBUTIONS TO THE FUND

11.01 Establishment of Retirement Fund. The Retirement Benefit Trustees shall establish a trust or contract which shall receive and distribute Plan assets and pay reasonable expenses pursuant to the terms of the Plan and this Trust Agreement.

11.02 Contributions to the Retirement Fund. Contributions to the Retirement Fund shall be in the amounts established from time to time by agreement between the Plumbing Contractors' Associations and the Union. In the event the payroll records of any Contractor or Contributor show that any employee on whose behalf the Contractor or Contributor is required to make contributions to the Retirement Fund is paid by salary or any method other than hourly wages, then the employee is presumed to have worked for a minimum of forty (40) hours in covered employment during each week of employment and contributions are made for all hours, or if different, the number of hours set forth in the Contractor's or Contributor's collective bargaining agreement or participation agreement for salaried employees. Each Contractor and Contributor participating in this Plan shall make contributions by check, draft, or money order delivered to the Fund Office or a party designated by the Retirement Benefit Trustees. After an appropriate record of the contributions is made, the Retirement Benefit Trustees shall forward the amounts represented by the checks, drafts, and money orders received to the Retirement Fund Trustee for deposit in the Retirement Fund.

In no event shall the Contractors or Contributors, directly or indirectly, receive any refund of Contributions made by them to the Trust, except in case of a bona fide mistake, and in case of such bona fide mistake, only to the extent permitted by law, nor shall any Contractor or Contributor directly or indirectly participate in the disposition of the Trust Fund or receive any benefits from the Trust. Except as otherwise required by law, no Contractor or Contributor shall be liable for any payments to the Trust Fund other than for contributions due pursuant' to a Collective Bargaining Agreement and of other payments required under the terms of this Trust Agreement. Upon the transfer to the Trustees of such contributions and other payments, all responsibilities of the Contractor or Contributor for each Contractor or Contributor contribution shall cease, and neither the Contractors or Contributors, Plumbing Contractor Associations, nor the Unions shall have any responsibilities for the acts of the Trustees. No person shall have any individual right, title, interest or claim against any Contractor or Contributor, contribution or the Trust Fund, except as may be expressly provided for in this Trust Agreement.

11.03 Contributions Irrevocable. Except as approved by the Retirement Benefit Trustees and permitted by federal law, all contributions to the Retirement Fund established under this Plan shall be held by the Retirement Fund Trustee according to the terms of the Trust Agreement or by any bank, trust company, insurance company, or investment counselor as the Retirement Benefit

Trustees designate, for the exclusive benefit of the Participants who are covered by this Plan, including Retired Participants, and are irrevocably available to provide benefits under this Plan and to pay the expenses of administration of this Plan and of the Retirement Fund established hereunder.

11.04 Collection Authority and Powers of the Trustees. The Trustees, in their fiduciary capacities, shall have the power to demand and collect the contributions of Contractors and Contributors to the Trust. The Trustees may take any and all steps, including assessing interest and liquidated damages on late amounts, and the institution and prosecution of and intervention in any legal proceeding, that may be necessary or desirable to effectuate the collection or preservation of contributions or other moneys which may be due and owing to the Trust, without prejudice, however, to the rights of the Union to take whatever steps it deems necessary for such purpose. Non-payment by any Contractor or Contributor of any moneys due shall not relieve any Contractor or Contributor from his obligation to make payment. Any fees (including, but not limited to accountant's fees, attorney's fees, court costs, and other out-of-pocket expenses) incurred as a result of the Fund's efforts to collect such contributions due and owing to the Trust, shall be paid fully by the Contractor and Contributor owing such amounts.

11.05 Obligation to Contribute. Each Contractor or Contributor shall contribute to the Retirement Fund on behalf of eligible employees in accordance with the applicable collective bargaining agreement or participation agreement. Contractors shall remit payment on a monthly basis pursuant to the instructions provided to each Contractor; contributions for each month shall be sent by the deadline established in the applicable collective bargaining agreements or Retirement Fund policies, or if no such deadline is established, under rules promulgated by the Trustees. Contractors subject to a weekly payment arrangement shall remit payments weekly.

11.06 Audits. The Trustees shall have the right to have payroll records of any Contractor or Contributor audited by a reputable firm of certified public accountants. The Trustees may establish policies for the collection of contributions and administration of payroll audits and Contractors and Contributors are subject to the terms of such policies.

Each Contractor or Contributor shall promptly furnish to the Trustees, on demand, the names of its employees, their Social Security numbers, the hours worked by each employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Contractor or Contributor at their place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All Employers shall furnish to the Trustees annually, upon request, a statement showing whether (a) the Contractor or Contributor is a corporation and the names of all its officers; or (b) if not a corporation, a certificate stating that it is either a partnership or an individual proprietorship and the names of the partners or the name of the individual proprietor. The Union will comply with any reasonable request of the Trustees to examine those records of the Union which may indicate the employment record of any Employee whose status is in dispute.

## SECTION 12
## MISCELLANEOUS

12.01 Validity of Contracts. The Retirement Benefit Trustees shall not be responsible under any circumstances for the validity of any Contracts issued under this agreement, nor for the failure on the part of any Insurer to make any payment or to provide for benefits under any Contract issued by it, nor for the action of any person or persons which make such Contracts null and void or unenforceable, either in whole or in part.

12.02 Reliance on Information Furnished by Contributors or Contractors to the Trustees. Any information furnished by Contributors, Contractors, or the Union to the Trustees like Participant compensation, the proper amount of contributions by Contractors or Contributors, the participant status of employees, and any other information which may be furnished by Contractors, Contributors, or the Union to the Trustees, shall be accepted by the Trustees as being true and correct, and the Trustees shall incur no liability in relying on the information.

12.03 Execution of Documents. All parties to this Trust or claiming any interest hereunder expressly agree to perform any and all acts, and to execute any and all documents and papers which at any time may be necessary or desirable for carrying out any of the provisions of this Trust.

12.04 Reliance Upon Communication. The Retirement Benefit Trustees shall not incur any liability in acting upon any notice, request, signed letter, facsimile transmission, or other paper or documents reasonably believed by them or any one of them to be genuine and signed or sent by the proper person.

12.05 Party to Litigation. It is expressly understood and agreed by each Employee who becomes a Participant hereunder, that except for its or their willful neglect, misfeasance, or fraud, the Retirement Benefit Trustees are in no way subject to any suit or litigation, or to any legal liability, for any cause or reason or thing whatsoever, in connection with this Trust or its operation, and each such Employee hereby releases the Retirement Benefit Trustees and their agents from any and all liability or obligation.

12.06 Disposition of Share of Missing Persons. If the Retirement Benefit Trustees are unable to make payment of any benefit under the Plan because of inability to find the person due the payment and the inability continues for a period of seven years, the benefit is forfeited; provided, however, if a claim is subsequently made for such benefit by the entitled person, the benefit shall be reinstated.

12.07 Gender and Case. Where used in this agreement, words in the masculine may be read and construed as in the feminine, and words in the singular may be read and construed as though used in the plural in all cases where those constructions would so apply.

12.08 Section Titles Not Part of Agreement. The section and subsection designations and titles are included solely for convenience and shall, in no event, be construed to affect or modify any of the provisions of this agreement or be construed as a part thereof.

12.09 Construction. It is intended that this Plan and the Trust Agreement which is a part thereof shall comply with the provisions of ERISA and constitute a qualified plan and trust under

the provisions of Section 401(a) of the IRC, and, accordingly, the provisions of this Plan and the Trust Agreement shall be construed and applied in a manner consistent with this intent. To the extent not inconsistent with the preceding sentence, the rights of terminated employees are determined by the terms of the Plan as they existed at the time employment terminated. This agreement is construed under the law of the State of Illinois to the extent such law has not been preempted by ERISA.

12.10 Agreement Binding on All Parties. This agreement is binding upon the heirs, executors, administrators, successors, and assigns of any and all parties hereto, present and future.

12.11 Applicable Law and Venue. The Trust is created and accepted in the state of Illinois and all questions pertaining to the validity or construction of the Trust and of the acts and transactions of the parties hereto shall be determined in accordance with the laws of the state of Illinois except as to matters governed by federal law. All contributions to the Trust shall be deemed to take place in the state of Illinois. The exclusive venue for resolving any disputes arising out of or relating to this Trust Agreement, including any claim for benefits or awards of Trust assets, shall be the United States District Court for the Northern District of Illinois Eastern Division.

12.12 Claims Appeals and Limitations Period. The Trustees shall have the power and authority to establish reasonable claims and appeals procedures should a Participant or beneficiary wish to appeal a denied benefit claim under the terms of the Plan. Participants and beneficiaries are required to exhaust their administrative appeal procedures under the terms of the Plan prior to filing any lawsuit or administrative claim against the Trust Fund. No lawsuit or administrative claim may be brought against the Trust Fund if it is not filed within one year from the date of receipt of the final adverse benefit determination on appeal.

12.13 Savings Clause. Should any provision of this Trust be held to be invalid, or invalid as to any person or instance, such fact shall not adversely affect the other provisions herein contained or the application of said provisions to any other person or instance, unless such invalidity shall make impossible for the functioning of the plan. No Trustee shall be held liable for any act done or performed in pursuance of any provisions hereof prior to the time such act or provision shall be held invalid by a court of competent jurisdiction.

IN WITNESS WHEREOF, the undersigned, in order to evince their acceptance of the obligations hereby imposed, and the terms and conditions set forth herein, have caused this Trust to be executed this 7th day of May 2021.

| UNION TRUSTEES | CONTRACTOR TRUSTEES |
| --- | --- |
| James F. Coyne | [signature] |
| [signature] | [signature] |
| [signature] | [signature] |
| [signature] | [signature] |
| Patrick McCarthy | |

# TRUST AGREEMENT

## Table of Contents


| | | Page |
|---|---|---|
| ARTICLE I | ESTABLISHMENT OF TRUST | |
| | 1.01 Function of Trust................ | 3 |
| | 1.02 Pension Fund...................... | 3 |
| ARTICLE II | ACCEPTANCE OF TRUST.................... | 4 |
| ARTICLE III | CONTRIBUTIONS TO THE PENSION FUND | |
| | 3.01 Making of Contributions........... | 4 |
| | 3.02 Duty of Pension Fund Trustee...... | 5 |
| ARTICLE IV | PAYMENTS FROM THE PENSION FUND | |
| | 4.01 Procedure for Payments............ | 5 |
| | 4.02 Unclaimed Payments................ | 6 |
| | 4.03 Erroneous Directions.............. | 7 |
| | 4.04 Spendthrift Provisions............ | 7 |
| ARTICLE V | INVESTMENT OF PENSION FUND | |
| | 5.01 Types of Investments.............. | 8 |
| | 5.02 Care to be Used................... | 8 |
| ARTICLE VI | TITLE TO THE PENSION FUND | |
| | 6.01 Vested in Pension Fund Trustee... | 9 |
| | 6.02 Interest of Employees............. | 9 |
| ARTICLE VII | POWERS AND DUTIES OF THE PENSION FUND TRUSTEE | |
| | 7.01 Powers of the Pension Fund Trustee | 9 |
| | 7.02 Duties of the Pension Fund Trustee | 11 |

TABLE OF CONTENTS, Cont'd. Page


ARTICLE VIII ACCOUNTS OF THE PENSION FUND TRUSTEE

8.01 Annual Audit..... ................ 12
8.02 Approval of Accounts............. 13
8.03 When Account Settled............. 13

ARTICLE IX PAYMENT OF EXPENSES.................... 14

ARTICLE X LIABILITIES AND IMMUNITIES

10.01 Reliance on Direction of Pension Benefit Trustees................. 15
10.02 Liability of Pension Fund Trustee 15
10.03 Liability of Pension Benefit Trustees........................ 16

ARTICLE XI AUTHORITY OF THE PENSION BENEFIT TRUSTEES

11.01 Determination of Rights.......... 16
11.02 Manner of Acting................. 17

ARTICLE XII RESIGNATION, REMOVAL, AND SUCCESSION OF PENSION FUND TRUSTEE

12.01 Resignation or Removal........... 18
12.02 Appointment of Successor Pension Fund Trustee.................... 18
12.03 Qualifications of Successor Pension Fund Trustee................ 19
12.04 Transfers to Successor Pension Fund Trustee.................... 19
12.05 Merger or Consolidation of Pension Fund Trustee ............ 20

ARTICLE XIII AMENDMENT OR TERMINATION

13.01 Amendment........................ 21
13.02 Termination...................... 22
13.03 Contractors or Contributors to Receive No Benefit............... 23

ARTICLE XIV CONSTRUCTION OF TRUST AGREEMENT........ 24

# TRUST AGREEMENT

THIS TRUST AGREEMENT, made this 28th day of May, 1954, by and between the Pension Fund Committee appointed by the Second Supplemental Agreement between the Plumbing Contractors' Association of Chicago, the West Suburban Plumbing Contractors' Association (formerly the West Suburban Master Plumbers' Association), the Northern Cook County Plumbing and Heating Contractors' Association (formerly the North Shore Plumbing and Heating Contractors' Association), and the Chicago Journeymen Plumbers' Local Union 130 of the United Association, dated May 14, 1953, which Committee, acting for and on behalf of the parties to said Agreement, is hereinafter referred to as the "Pension Benefit Trustees," party of the first part, and the Continental Illinois National Bank and Trust Company of Chicago, Chicago, Illinois, hereinafter referred to as the "Pension Fund Trustee", party of the second part,

W I T N E S S E T H :

WHEREAS, the Plumbing Contractors' Association of Chicago, the West Suburban Plumbing Contractors' Association and the Northern Cook County Plumbing and Heating Contractors' Association (hereinafter referred to as the "Plumbing Contractors'

Associations") have entered into a Second Supplemental Agreement with the Chicago Journeymen Plumbers' Local Union 130 of the United Association (hereinafter referred to as the "Union"), dated May 14, 1953, providing for the creation of a Trust Fund and providing for a Pension Fund Committee authorized to agree upon the terms and conditions of said Trust; and

WHEREAS, the said Pension Fund Committee contemporaneously herewith has established a pension plan known as the PLUMBERS' PENSION FUND LOCAL 130, U.A., pursuant to which the undersigned individuals are authorized to execute this Trust Agreement in their capacity as Pension Benefit Trustees; and

WHEREAS, the undersigned individuals now desire to establish a Trust, pursuant to and in accordance with the terms and provisions of the aforesaid Plan, which Trust is intended to qualify for tax exemption under Section 165(a) of the Internal Revenue Code, as it now exists and as it may hereafter be amended, and the contributions to which Trust are intended to be deductible for income tax purposes under Section 23(p) of the Internal Revenue Code, as it now exists and as it may hereafter be amended;

NOW, THEREFORE, in consideration of the premises and of the mutual undertakings and agreements of the parties hereto, hereinafter set forth, IT IS HEREBY AGREED as follows:

## ARTICLE I

## ESTABLISHMENT OF TRUST

1.01 Function of Trust. This Trust hereby established shall be known as the PLUMBERS' PENSION TRUST UNDER THE PLUMBERS' PENSION FUND LOCAL 130, U.A. (hereinafter referred to as the "Trust"). The terms of this Trust, as hereinafter set forth, shall govern the Pension Fund established pursuant to the said Plan. The term "Plan" wherever used herein shall refer to the aforesaid PLUMBERS' PENSION FUND LOCAL 130, U.A., as amended from time to time. Terms used in this Trust Agreement which are defined in the Plan shall have the same meanings as in the Plan, unless the context clearly indicates otherwise. A copy of the Plan and of each amendment thereof shall be furnished to the Pension Fund Trustee for convenience of reference.

1.02 Pension Fund. The Pension Fund shall consist of the deposit of 144,102.30 Dollars by the Pension Fund Committee on the date of execution of this Trust Agreement, the receipt of which is hereby acknowledged by the Pension Fund Trustee, and of the deposit forthwith of such additional sum as shall constitute the entire remaining balance of the Special Account now in the control of the Pension Fund Committee, and of the deposit and assignment of the securities held by the Pension Fund Committee, all to be verified by audit as provided in the Plan, and of all contributions under the

Plan made thereafter by Contractors and Contributors to the Pension Fund Trustee, together with the income, avails, and increment thereof, less disbursements therefrom.

## ARTICLE II

## ACCEPTANCE OF TRUST

The Pension Fund Trustee hereby accepts the Trust subject to all of the terms and conditions of this Trust Agreement, and agrees to hold and administer the Pension Fund and to execute the Trust in accordance with the provisions hereof.

## ARTICLE III

## CONTRIBUTIONS TO THE PENSION FUND

3.01 Making of Contributions. Contributions by Contractors and Contributors to the Pension Fund shall be made at such times and in such amounts as from time to time may be established by Agreements between the Plumbing Contractors' Associations and the Union. All contributions to the Pension Fund shall be held by the Pension Fund Trustee pursuant to the terms of this Trust Agreement for the exclusive benefit of the employees of Contractors and Contributors (including Retired Participants and their surviving Annuitants, if any) covered by the Plan, and, subject to the provisions of Article

XIII, Section 13.03 below, shall be irrevocably available to provide benefits under the Plan and to pay the expenses of administration thereof and of the Pension Fund.

3.02 Duty of Pension Fund Trustee. The Pension Fund Trustee shall be accountable for the Pension Fund, but shall have no duty or obligation to call for contributions from Contractors or Contributors or to determine whether the Pension Fund is adequate to provide benefits in accordance with the Plan.

## ARTICLE IV

## PAYMENTS FROM THE PENSION FUND

4.01 Procedure for Payments. Payments of benefits and of expenses of administration of the Plan shall be made from the Pension Fund by the Pension Fund Trustee to such persons, in such manner, at such times, and in such amounts, as are indicated by the Pension Benefit Trustees in written directions to the Pension Fund Trustee given over the signature of the authorized representatives of the Pension Benefit Trustees. The Pension Fund Trustee shall regard a check drawn on the Pension Fund and signed by the authorized representatives of the Pension Benefit Trustees as a written direction within the meaning of the preceding sentence. If the Pension Benefit Trustees shall

direct from time to time, the Pension Fund Trustee shall make such payments from the Pension Fund as shall be necessary to purchase annuity contracts for the purpose of providing Retired Participants with the benefits to which they are entitled under the Plan. The Pension Benefit Trustees from time to time shall designate the persons authorized as their representatives to give directions on behalf of the Pension Benefit Trustees for payments from the Pension Fund and shall notify the Pension Fund Trustee in writing of such designation. The Pension Fund Trustee shall be fully protected in making payments out of the Pension Fund in accordance with written directions so given, and shall have no responsibility to see to the application of said payments or to ascertain whether such directions comply with the terms of the Plan, and shall not be liable for any payment made by them in good faith without notice or actual knowledge of a change in the condition or status of any person affecting his right to receive payments hereunder.

4.02 Unclaimed Payments. If any payment directed to be made from the Pension Fund is not claimed, the Pension Fund Trustee shall notify the Pension Benefit Trustees and shall dispose of such payment, and shall continue, suspend, or terminate future payments to the payee involved, as the Pension Benefit

Trustees shall direct.

4.03 Erroneous Directions. Any mistake in any direction, certificate, notice, or other document furnished or issued by the Pension Benefit Trustees or by the Pension Fund Trustee in connection herewith may be corrected when the mistake becomes known, and the Pension Benefit Trustees may direct any adjustment or action which they deem practicable under the circumstances to remedy the mistake.

4.04 Spendthrift Provisions. No benefit payment to be made by the Pension Fund Trustee under this Trust Agreement shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, attachment, execution, or levy, of any kind, voluntary or involuntary, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge, or otherwise dispose of any right to any benefit payment hereunder shall be void. No person entitled to a benefit under the Plan shall have any right in any way to create a lien upon any part of the Pension Fund, nor shall the Pension Fund in any manner be liable for or subject to the debts, contracts, liabilities, obligations, engagements, or torts of any such person entitled to any benefit payment hereunder.

## ARTICLE V

## INVESTMENT OF PENSION FUND

5.01 Types of Investments. The Pension Fund, except such amounts as may be estimated by the Pension Fund Trustee from time to time to be required for current payments and expenses, shall be invested and reinvested without distinction between principal and income. The Pension Fund Trustee is authorized to to invest in bonds of the United States of America, or of any state, municipality, or subdivision thereof, and of the Dominion of Canada; in first mortgages on and secured by improved, income-producing real estate located in the United States; in bonds, notes, debentures, mortgages, equipment trust certificates, investment trust certificates, and stocks, preferred or common (including voting trust certificates), of any company, corporation, or association within the United States of America or the Dominion of Canada; and in real estate; as the Pension Fund Trustee may deem advisable.

5.02 Care to be Used. The Pension Fund Trustee, in investing and reinvesting the Pension Fund, shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation,

but in regard to the permanent investment of their funds, considering the probable income from, as well as the probable safety of, their capital.

## ARTICLE VI

## TITLE TO THE PENSION FUND

6.01 Vested in Pension Fund Trustee. All right, title and interest in and to the assets comprising the Pension Fund shall at all times be vested exclusively in the Pension Fund Trustee.

6.02 Interest of Employees. No employee of any Contractor or Contributor shall have any right to, or interest in, any part of the Pension Fund, upon termination of employment, or otherwise, except the right as determined under the provisions of the Plan, to receive, from time to time, as they become due, the benefits payable to such employee out of the Pension Fund.

## ARTICLE VII

## POWERS AND DUTIES OF THE PENSION FUND TRUSTEE

7.01 Powers of the Pension Fund Trustee. The Pension Fund Trustee shall have the following powers, and in addition thereto, except as otherwise provided in this Agreement, may do all such

acts, execute all such instruments, take all such proceedings, and exercise all such rights and privileges with relation to any assets constituting a part of the Pension Fund, which it may in good faith deem proper to carry out the purposes of this Agreement:

(a) The Pension Fund Trustee shall have power in its uncontrolled discretion and judgment to invest and reinvest the Pension Fund as provided in Article V above and to collect the income, rents, issues, profits, and increase therefrom.

(b) The Pension Fund Trustee may hold, manage, improve, repair and control all property, real or personal, at any time forming part of the trust estate and sell, convey, transfer, exchange, partition, lease for any term (even though such term extends beyond the duration of this Trust or commences in the future), mortgage, pledge and otherwise dispose of the same from time to time in such manner, for such consideration, and upon such terms and conditions as the Pension Fund Trustee, in its discretion, shall determine.

(c) The Pension Fund Trustee may vote any stock or other securities and exercise any right appurtenant to any stock, other securities, or property held hereunder, either in person or by general or limited proxy or power of attorney.

(d) The Pension Fund Trustee may borrow money with or without interest for the purposes of the Trust from others. The Pension Fund Trustee may make advances of its own funds to the Trust, upon such terms and conditions as the Pension Benefit Trustees shall approve. For any sums so borrowed or advanced, the Pension Fund Trustee may issue its promissory note as Trustee and secure the repayment thereof by pledging any securities or other property in its possession.

(e) The Pension Fund Trustee may settle, compromise, or submit to arbitration any claims, debts, or damages due to or owing from the Pension Fund, if authorized by the Pension Benefit Trustees, and may commence and defend suits or legal proceedings, and represent the Trust in all suits or legal proceedings.

(f) The Pension Fund Trustee may hold securities in bearer form and may register securities held by it hereunder in its own name or in the name of a nominee without the addition of words indicating that such securities are held in a fiduciary capacity, provided that it shall be liable for the acts of its nominee and that the records of the Pension Fund Trustee shall indicate the ownership of such securities.

(g) The Pension Fund Trustee may make, execute, and deliver as Trustee, with or without a provision for no individual liability on its part, any and all conveyances, mortgages, contracts, waivers, releases, leases, assignments, powers of attorney, or other instruments in writing that the Pension Fund Trustee may deem necessary or advisable in administering the Pension Fund.

(h) The Pension Fund Trustee may employ suitable agents and counsel and pay their reasonable compensation and expenses.

7.02 Duties of the Pension Fund Trustee. In addition to any other duties imposed upon it by the terms of this Trust Agreement, the Pension Fund Trustee shall have the following duties and obligations:

(a) The Pension Fund Trustee shall have the custody and care of the assets in the Pension Fund and shall have the liability of a Trustee for the safe-

keeping of all cash and securities constituting a part of the Pension Fund.

(b) The Pension Fund Trustee shall maintain accurate and detailed records and accounts of all investments, receipts, disbursements, and other transactions, acts, and proceedings hereunder and shall perform all clerical and accounting work in connection with the management and investment of the Pension Fund. All accounts, books, and records of the Pension Fund Trustee relating to the Pension Fund shall be open at all reasonable times to inspection and audit by any person or persons designated by the Pension Benefit Trustees or any one of them.

(c) The Pension Fund Trustee, at the direction of the Pension Benefit Trustees, shall submit to the auditors designated by the Pension Benefit Trustees and to the actuary selected by the Pension Benefit Trustees for consultation with respect to the Plan, such valuations, reports, and other information as they reasonably may require.

(d) The Pension Fund Trustee shall prepare and submit to the Pension Benefit Trustees an annual accounting as provided in Article VIII of this Trust Agreement, and such other periodic reports and accounts as the Pension Benefit Trustees may reasonably require and shall perform such administrative duties in connection with the Pension Fund, in addition to those hereinabove set forth, as shall be delegated to it by the Pension Benefit Trustees from time to time.

## ARTICLE VIII

## ACCOUNTS OF THE PENSION FUND TRUSTEE

8.01 Annual Audit. Within sixty days after each May 31 (or the close of such other annual period as may be agreed

upon by the Pension Fund Trustee and the Pension Benefit Trustees), the Pension Fund Trustee shall file with the Pension Benefit Trustees a written account of the condition of the Pension Fund, listing all securities and other property purchased and sold, all receipts, disbursements, and other transactions effected by it during such annual period; and setting forth a description of all securities and other property held by it at the end of such year. Either the Pension Benefit Trustees or the Pension Fund Trustee shall have the right to require an audit by certified public accountants of the records and assets of the Pension Fund, but in any event an annual audit of the Pension Fund shall be made (by auditors selected by the Pension Benefit Trustees) which shall be available for inspection by the Contractors, Contributors, Plumbing Contractors' Associations, Union or any other interested person at the office of the Pension Benefit Trustees.

8.02 Approval of Accounts. The Pension Benefit Trustees may approve the accounting of the Pension Fund Trustee by written notice of approval delivered to the Pension Fund Trustee or by failure to express objection to such accounting in writing delivered to the Pension Fund Trustee within two (2) years from the date upon which the accounting was delivered to the Pension Benefit Trustees.

8.03 When Account Settled. Upon the receipt of a

written approval of the accounting, or upon the passage of said period of time within which objections may be filed, without written objections having been delivered to the Pension Fund Trustee, such accounting shall be deemed to be approved, and the Pension Fund Trustee shall be released and discharged as to all items, matters, and things set forth in such accounting. If the Pension Fund Trustee and the Pension Benefit Trustees cannot agree with respect to any act or transaction reported in any statement, the Pension Fund Trustee shall have the right to have its accounts settled by judicial proceeding if it so elects, in which event the Pension Fund Trustee and the Pension Benefit Trustees shall be the only necessary parties.

## ARTICLE IX

## PAYMENT OF EXPENSES

The Pension Fund Trustee shall have the power to pay from the Pension Fund all reasonable and necessary expenses, taxes, and charges (including the Pension Fund Trustee's reasonable charges for services as agreed upon between the Pension Benefit Trustees and the Pension Fund Trustee, and fees for its attorneys and agents), incurred on behalf of the Trust in connection with the administration or operation of this Pension Fund, to the extent that such items are not otherwise paid.

## ARTICLE X

## LIABILITIES AND IMMUNITIES

10.01 Reliance on Direction of Pension Benefit Trustees. The Pension Fund Trustee shall be fully protected from any responsibility for any action taken or omitted or payments made in accordance with written directions or a check signed by the persons authorized to sign for the Pension Benefit Trustees, or in reliance upon what is represented as a copy of a resolution of the Pension Benefit Trustees which is certified to by the Secretary of the Pension Benefit Trustees or by any other person or persons authorized to sign for the Pension Benefit Trustees.

10.02 Liability of Pension Fund Trustee. The Pension Fund Trustee shall not incur liability of any nature in connection with any act done or omitted to be done in the administration of the Trust, except in cases of its negligence, wilful misconduct, or lack of good faith, and except with respect to its obligation of safekeeping, making investments, and its liability for acts of its nominee (as specified in Sections 7.01(f) and 7.02(a) of this Agreement). The Pension Fund Trustee shall be indemnified and saved harmless out of the Pension Fund, from and against any and all liability to which the Pension Fund Trustee may be subjected by any such protected act or conduct, including all expenses incurred in its defense.

10.03 Liability of Pension Benefit Trustees. No authorized representative of the Pension Benefit Trustees shall incur any personal liability of any nature in connection with any act done or omitted to be done in good faith in the administration of the Trust, except in cases of gross negligence or wilful misconduct. Such representatives of the Pension Benefit Trustees, and each of them, shall be indemnified and saved harmless by the Pension Benefit Trustees, or from the Pension Fund, if so directed by the Pension Benefit Trustees, from and against any and all liability to which such representatives of the Pension Benefit Trustees, or any of them, may be subjected by reason of any such good faith act or conduct in their official capacity, including all expenses reasonably incurred in their defense.

## ARTICLE XI

## AUTHORITY OF THE PENSION BENEFIT TRUSTEES

11.01 Determination of Rights. The Pension Benefit Trustees shall have complete authority to determine, in accordance with the provisions of the Plan, the existence or non-existence, nature and amount of the rights and interests of all persons in the Pension Fund and under the Plan. The Pension Benefit Trustees shall have authority to enforce this Agreement on behalf of any and all persons having or claiming any interest

in the Pension Fund or under this Agreement or the Plan. In any action or proceeding affecting the Pension Fund or for instructions to the Pension Fund Trustee, the Pension Benefit Trustees and the Pension Fund Trustee shall be the only necessary parties, and no employee or former employee of any Contractor or Contributor or any other person having or claiming to have an interest in the Pension Fund or under the Plan shall be entitled to any notice or process. Any judgment which may be entered in any such action or proceeding shall be binding and consluslve on all persons having or claiming to have any interest in the Pension Fund or under the Plan.

11.02 Manner of Acting. Any action by the Pension Benefit Trustees pursuant to any of the provisions of this Agreement shall be evidenced by a written instrument executed by the persons authorized from time to time to take such action as the representatives of the Pension Benefit Trustees, or by a resolution of the Pension Benefit Trustees, certified to the Pension Fund Trustee over the signature of the Pension Benefit Trustees' Secretary. A check directing the payments of money from the Pension Fund shall be considered a written instrument under this section.

## ARTICLE XII

## RESIGNATION, REMOVAL, AND SUCCESSION OF PENSION FUND TRUSTEE

12.01 Resignation or Removal. The Pension Fund Trustee and any successors in trust, at any time acting hereunder, may resign and be discharged from the Trust created hereby, by giving notice in writing to the Pension Benefit Trustees. The Pension Fund Trustee and any successors in trust, at any time acting hereunder, may be removed by the Pension Benefit Trustees at any time with or without cause, by an instrument in writing executed in the name of the Pension Benefit Trustees by their authorized representatives pursuant to a resolution adopted by the Pension Benefit Trustees by the affirmative vote of not less than three (3) Union Trustees and three (3) Contractor Trustees, at a meeting held after ten (10) days' written notice of intention to consider such action. Such resignation or removal, as the case may be, shall take effect at such time as a Successor Pension Fund Trustee shall have been appointed and shall have accepted such appointment, as hereinafter provided.

12.02 Appointment of Successor Pension Fund Trustee. In case a vacancy shall arise in the position of Pension Fund Trustee from any cause, a Successor Pension Fund Trustee shall be appointed by an instrument in writing executed in the name of the

Pension Benefit Trustees by their authorized representatives pursuant to a resolution adopted by the Pension Benefit Trustees by the affirmative vote of not less than three (3) Union Trustees and three (3) Contractor Trustees, at a meeting held after ten (10) days' written notice of intention to consider such action, and a copy of such appointment shall be delivered to the Successor Pension Fund Trustee so appointed and to the Pension Fund Trustee ceasing to act, if it be in existence. Any Successor Pension Fund Trustee so appointed, shall execute, acknowledge and deliver to the Pension Benefit Trustees an instrument in writing accepting such appointment and agreeing to the terms and conditions contained in this Trust Agreement. All of the provisions set forth herein with respect to the Pension Fund Trustee shall relate to each Successor Pension Fund Trustee so appointed, with the same force and effect as if such Successor Pension Fund Trustee originally had been named herein as Pension Fund Trustee.

12.03 Qualifications of Successor Pension Fund Trustee. Any Successor Pension Fund Trustee shall be a bank or trust company incorporated under the laws of the United States of America, or any State thereof, having a capital and surplus aggregating at least $5,000,000.

12.04 Transfers to Successor Pension Fund Trustee. Upon

the appointment of a Successor Pension Fund Trustee, the removed or resigning Pension Fund Trustee shall transfer and deliver to such Successor Pension Fund Trustee records reasonably adequate to enable the Successor Pension Fund Trustee to discharge its duties hereunder, together with the assets in the Pension Fund, after reserving therefrom such amount as it reasonably shall deem necessary to provide for any sums chargeable against the Pension Fund for which it may be liable. The receipt of the Successor Pension Fund Trustee and the approval by the Pension Benefit Trustees of the final accounting of the removed or resigning Pension Fund Trustee shall be a full and complete acquittal and discharge of such removed or resigning Pension Fund Trustee; and any Successor Pension Fund Trustee shall have no liability whatsoever for the acts or omissions of any prior Pension Fund Trustee.

12.05 Merger or Consolidation of Pension Fund Trustee. In the event any Pension Fund Trustee hereunder shall at any time merge or consolidate with, or shall sell or transfer substantially all of its assets and business to another banking association or corporation, organized under State or Federal law, the banking association or corporation resulting from such merger or consolidation or the banking association or corporation into which it is converted or to which such sale or transfer shall be

made shall thereupon become and be the Pension Fund Trustee under this Agreement with the same effect as though originally so named, and such banking association or corporation shall thereupon execute and deliver to the Pension Benefit Trustees an instrument of acceptance of the terms and provisions of this Trust.

## ARTICLE XIII

## AMENDMENT OR TERMINATION

13.01 Amendment. The Pension Benefit Trustees shall have the right at any time and from time to time to amend this Trust Agreement, in whole or in part, retroactively or otherwise, by the affirmative vote of not less than all of the Pension Benefit Trustees, at a meeting held after ten (10) days' written notice of intention to consider such action, provided that the rights, duties, or responsibilities of the Pension Fund Trustee shall not be changed in any manner without its written consent. Any such amendment shall be expressed in an instrument executed in the name of the Pension Benefit Trustees by their authorized representatives and by the Pension Fund Trustee. In the event the Pension Fund Trustee is unwilling or unable to execute such instrument, it may resign or be removed by the Pension Benefit Trustees, as above provided.

13.02 Termination. This Agreement and the Trust hereunder may be terminated at any time by the Pension Benefit Trustees upon written notice executed in the name of the Pension Benefit Trustees by their authorized representatives, pursuant to action of the Pension Benefit Trustees taken in the manner set forth above with respect to Amendments, and delivered to the Pension Fund Trustee. Upon the termination of the Trust as herein or in the Plan provided, the Pension Fund Trustee shall make such distributions (1) as are directed by the Pension Benefit Trustees (a) in accordance with the Plan, and (b) with respect to any matter not covered by the Plan, as the Pension Benefit Trustees may deem just and equitable; or (2) in the absence of such directions, (a) as are required by the Plan, and (b) with respect to any matter not covered by the Plan, as the Pension Fund Trustee shall deem just and equitable Unless sooner terminated, the Trust shall terminate when there shall be no funds remaining in the hands of the Pension Fund Trustee.

From and after the date of the termination of the Trust and until the final distribution of the Pension Fund, the Pension Fund Trustee shall continue to have all the powers and duties provided under this Trust Agreement which are necessary and expedient for the orderly liquidation and distribution of the Pension Fund.

13.03 Contractors or Contributors to Receive No Benefit. It shall be and it is hereby made impossible, upon the termination of this Agreement or of the Trust or any part thereof, or pursuant to any amendment, modification, or alteration of this Agreement, or otherwise, at any time prior to the satisfaction of all liabilities under the Plan, for all or any part of the corpus or income of the Pension Fund to be used for or diverted to purposes other than for the exclusive benefit of employees of the Contractors and Contributors covered by the Plan (including Retired Participants and their surviving Annuitants, if any) and for the payment of expenses properly payable under the terms of this Trust Agreement or the Plan; provided, however, that refunds may be made to Contractors in respect to contributions paid for work done on exempted jobs (plumbing contracts made prior to January 1, 1953) as directed in writing by the Pension Benefit Trustees. Any assets remaining in the Pension Fund due to variations between actuarial computations and actual experience, after the satisfaction of all liability under the Plan to Employees of the Contractors and Contributors (including Retired Participants and their surviving Annuitants, if any) shall be paid over to Employees pursuant to provisions of the Plan.

## ARTICLE XIV

## CONSTRUCTION OF TRUST AGREEMENT

This Trust Agreement shall be construed and enforced according to the laws of the State of Illinois, and all provisions hereof shall be administered according to the laws of said State. The article and section titles herein are included solely for convenience and in no event shall be construed to affect or modify any provisions of this Trust Agreement or be construed as part thereof.

IN WITNESS WHEREOF, the undersigned, as members of the Pension Fund Committee appointed by the aforesaid Second Supplemental Agreement and as the Pension Benefit Trustees under the PLUMBERS' PENSION FUND LOCAL 130, U.A., and the Pension Fund Trustee, by its duly authorized officers, have executed this Trust Agreement, and the latter has hereunder affixed its corporate seal, all on the day and year first above written.

PENSION BENEFIT TRUSTEES
AND
PENSION FUND COMMITTEE

| Union Members & Trustees | Contractor Members & Trustees |
| --- | --- |
| Stephen M. Bailey /s/<br>Stephen M. Bailey | Robert E. Murphy /s/<br>Robert E. Murphy |
| Edward Domas /s/<br>Edward Domas | George D. Hardin /s/<br>George D. Hardin |
| Raymond E. Petersen /s/<br>Raymond E. Petersen | Oswald J. Cook /s/<br>Oswald J. Cook |
| Thomas Ferrier /s/<br>Thomas Ferrier | Bert C. Young /s/<br>Bert C. Young |
| George E. Mitchell /s/<br>George E. Mitchell | Victor J. Killian /s/<br>Victor J. Killian |

PENSION FUND TRUSTEE

CONTINENTAL ILLINOIS NATIONAL BANK
AND TRUST COMPANY OF CHICAGO

By Ed. Benninghoven /s/
Vice President

ATTEST:

V. S. Nelson /s/
Assistant Secretary

(Corporate
Seal)

# AMENDMENT TO AND RESTATEMENT OF THE TRUST AGREEMENT ESTABLISHING THE TRUST FUND FOR APPRENTICE AND JOURNEYMAN EDUCATION AND TRAINING

WHEREAS, the Trust Agreement creating the Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A., was originally executed June 1, 1960 by and between the Chicago Journeymen Plumbers' Local 130 U.A., AFL-CIO (hereinafter referred to as the "Union") and the Plumbing Contractors Association of Chicago (the predecessor of the Plumbing Contractors Association Midwest), the Northern Cook County Plumbing & Heating Contractors' Association, and the West Suburban Contractors' Association (the predecessor of the West Suburban Association of Plumbing Contractors), and amended and restated from time to time, the most recent restatement dated November 4, 1992;

WHEREAS, said Trust Agreement provides that it can be amended by a majority vote of the Trustees, and the Trustees have previously amended the Trust Agreement five times; and

WHEREAS, the Trustees desire to amend and restate said Trust Agreement to incorporate all prior amendments and to further amend said Trust Agreement as provided herein;

NOW THEREFORE, the Trustees this November 9, 2017, hereby amend and restate the Trust to read as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01. The following terms, words and phrases used in this instrument, unless the context indicates otherwise, shall have the following meanings:

a. The terms "Alternate Trustee" and "Alternate Trustees" shall include the individuals named in accordance with Section 3.01(b) of Article III hereof and their successors.

b. The term "Apprentice" is a person who participates in the Apprentice Program.

c. The term "Contractors' Associations" shall refer to the Plumbing Contractors Association Midwest ("PCA"), and the West Suburban Association of Plumbing Contractors ("WSA").

d. The term "Employer" is a person or firm who employs Journeymen plumbers and/or Apprentices and who is a party to an Agreement with the Union.

e. The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

f. The "Fiscal Year" of the Trust is the twelve month period beginning June 1, of one year and ending on May 31, of the succeeding twelve month period thereafter for the life of the Trust Agreement.

g. The terms "Joint Apprentice Committee" or "JAC" or "Committee" shall mean the Trustees acting in their capacity of administering the Apprentice Training Program, including establishing an organized, planned system of apprentice training and establishing apprenticeship standards.

h. The term "Journeyman" is a person who participates in the Journeyman Program.

i. The term "Program" is the Apprentice and Journeyman Training Programs and the prescribed curriculum for the Journeyman Training Program.

j. The Trust created hereby shall be known as the "Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A." (hereinafter referred to as the "Trust") and is a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code.

k. The term "Trust Agreement" is the within agreement, and all amendments thereof and supplements thereto.

l. The term "Trust Fund" is the assets of the Trust of every kind and description.

m. The terms "Trustee" or "Trustees" shall include the Trustees herein named and the Alternate Trustees and their respective successors, except as otherwise indicated by the context. The Trustees and the Alternate Trustees, in their collective capacities, shall be known as the Trustees of the Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A., and shall conduct the business of the Trust and execute all instruments in that name.

Section 1.02. Except when otherwise indicated by the context, any masculine terminology used herein shall also include the feminine, and the use of any term herein as the singular shall also include the plural thereof.

## ARTICLE II
## PURPOSE OF TRUST, CONTRIBUTIONS AND ESTABLISHMENT OF TRUST FUNDS

Section 2.01. The primary purpose of the Trust is to defray the cost of the Apprentice and Journeyman Training Program. The general purpose of the Trust is to provide proper training for Apprentices and advanced training for Journeymen, who will correctly install proper sanitation facilities after completion of the training Program. The Trustees shall use and apply the Trust Fund to carry out the said purpose of the Trust as follows:

(a) To pay or provide for payment of all the ordinary and necessary expenses of maintaining the assets of the Trust and collecting the Employers' contributions and apprentice tuition repayments, and administering the affairs of the Trust, including the ability to delegate collection efforts to other affiliated funds; and

(b) To establish and accumulate such reasonable reserve funds as the Trustees in their discretion shall determine reasonably necessary or desirable for the efficient performance of the primary and other purposes of the Trust; and

(c) To expend and disburse such portion of the Trust Fund as is in excess of the amounts required under sub-paragraphs (a) and (b) of this Section 2.01 for the training of Apprentices and Journeymen in such manner, and for such projects as the Trustees in their discretion deem desirable, and in accordance with the purposes of this Trust and of the Program.

Section 2.02.

(a) Contributions to the Trust shall be made by Employers in such amounts and at such times as may be established, from time to time, pursuant to the terms of the applicable collective bargaining agreements between the Contractors' Associations or any Employer, including the Kankakee & Iroquois Counties Plumbing & Piping Contractors Association, and the Union.

(b) Tuition repayments to the Trust shall be made by Apprentices and former Apprentices in accordance with rules established by the Committee.

(c) The sums contributed and to be contributed by the Employers and repayments by Apprentices under the provisions of this Section 2.02, shall constitute and be credited to the Trust Fund hereunder, and shall be held, administered and distributed by the Trustees as provided in this Agreement. The Trust also receives grants from nonprofit and government organizations for use in training programs.

Section 2.03. The recruitment, selection, employment, and training of Apprentices shall be without discrimination because of race, color, religion, national origin, sex, sexual orientation, age (40 or older), genetic information, disability, ancestry, marital status, parental status, arrest record, military discharge status, source of income, gender identity or housing status; or the actual or perceived association with such a person.

Section 2.04. Limitation of Use of Funds. The Trust Fund and all Trust income must be set aside and used solely for the purpose of providing those training and benefits established by the Trust Fund and any other purposes established by the Trustees in the manner described in Section 501(c) of the Internal Revenue Code and for the payment of reasonable costs of administration directly connected with the Trust purpose.

## ARTICLE III
## ADMINISTRATION OF TRUST

Section 3.01.

(a) The Trust and the Program shall be administered by ten (10) Trustees-- five (5) to be appointed by the Union, (hereinafter referred to as "Union Trustees"), and five (5) to be appointed by the Contractors' Associations, (hereinafter referred to as "Employer Trustees"). Of the Employer Trustees, three (3) appointed by the PCA, shall be known as "PCA TRUSTEES," and two (2) appointed by the WSA shall be known as "WSA TRUSTEES." Each Successor Trustee will have the same classification held by the Trustee who he replaces. Said Trustees have accepted and do hereby accept their appointment as the Trustees hereunder and of the Trust created by this Trust Agreement, and agree to hold, administer and distribute the Trust Fund in accordance with the terms,

provisions, and conditions of this Trust Agreement. A list of the current Trustees and the Training Director is attached as Appendix A.

(b) The Alternate Trustees, two (2) to be appointed by the Union, (hereinafter referred to as the "Union Alternate Trustees") and two (2) to be appointed by the Contractors' Associations (one by the WSA and one by the PCA hereinafter referred to as the "Employer Alternate Trustees"), shall be entitled to attend all meetings of the Trustees. Each Alternate Trustee may participate in all discussions and deliberations of the Trustees, but shall not be entitled to vote on any matter except as described in this subsection. An Alternate Trustee shall not be eligible to be an officer of the Trust Fund. If one Employer Trustee is not present at a meeting the Employer Alternate Trustee shall be entitled to vote in place of the absent Employer Trustee unless a proxy has been designated. If more than one Employer Trustee is not present at a meeting the Employer Alternate Trustee shall be entitled to vote in place of the absent Employer Trustee with the shortest tenure as a Trustee unless a proxy has been designated. If one Union Trustee is not present at a meeting a Union Alternate Trustee shall be entitled to vote in place of the absent Union Trustee unless a proxy has been designated. If more than one Union Trustee is not present at a meeting, the Union Alternate Trustee shall be entitled to vote in place of the absent Union Trustee with the shortest tenure as a Trustee. In any meeting when one or both of the Alternate Trustees are entitled to vote, the vote of such Alternate Trustee shall be accorded the same weight as

the vote of any Trustee and such Alternate Trustee is authorized to sign any instrument or document reflecting any action taken by the Trustees upon which the Alternate Trustee was authorized to vote.

(c) The Trustees shall select from among themselves, a Chairman and a Co-Chairman, one position to be filled by an Employer Trustee (appointed by a majority vote of the Employer Trustees, not including the Alternate Trustees) and one by a Union Trustee (appointed by a majority vote of the Union Trustees, not including the Alternate Trustees). The Chairman will conduct all meetings of the Trustees and the Co-Chairman will assume the duties of the Chairman when the Chairman is unable to act. The Trustees (not including the Alternate Trustees) shall select one of their members who shall act as Secretary and another who shall act as Treasurer of the Trust to serve for such period as the Trustees may determine. The Chairman and the Co-Chairman, or three of the Union Trustees and three of the Employer Trustees jointly, may call a meeting of the Trustees by giving at least five (5) days written or electronic notice. Three Union Trustees and three Employer Trustees, in person or by proxy, shall constitute a quorum for the transaction of business at any meeting.

(d) Subject to the provisions of Section 3.01(b) of Article III any Trustee shall have the right to give a written proxy to another Trustee of the same classification (Union or Employer Trustee). A Trustee in receipt of said proxy shall be entitled to act for the Trustee whose proxy he holds, in the same manner and with the same effect as such Trustee could act if present.

(e) All decisions of the Trustees, and all action taken or authorized by the Trustees, shall be made at a meeting where a quorum is present, except as hereinafter provided. Matters of an urgent nature pertaining to the administration of the Plan and Trust may be reviewed and voted on outside of a regular or special meeting by the Trustees by way of an email poll or a telephone conference after advanced notice of such matter is provided to the Trustees.

(f) If a majority of the Trustees cannot agree to accept or reject any proposition, and therefore become deadlocked or in the event of any deadlock among the Trustees in any matter in connection with the administration, interpretation of, or operation of the Program or Fund or as otherwise designated in this Agreement, the Trustees shall select an impartial person to decide the question as umpire. In the event the Trustees cannot mutually agree upon the selection of such impartial person within thirty (30) days from the date of said deadlock on such proposition, the Trustees will agree on an impartial umpire to decide the dispute pursuant to the Impartial Umpire Rules for Arbitration of Impasses Between Trustees of Joint Employee Benefit Trust Funds administered by the American Arbitration Association then in effect (the "Rules"). Such impartial umpire shall proceed, pursuant to the Rules, to hear the dispute between the Trustees and decide such dispute, and the decision of such umpire shall be final and binding upon the Trustees, and all parties or persons interested herein. If the Trustees fail to appoint an impartial

umpire within that thirty (30) day period, an impartial umpire will, on petition of any Trustee, be appointed by the Chief Judge of the United States District Court for the Northern District of Illinois, Eastern Division. The decision of the umpire selected or appointed is binding upon the Trustees and upon all interested parties or persons. The reasonable compensation of the umpire and all expenses incurred by him and the Trustees arising from the dispute shall be paid out of the Trust Fund. The impartial umpire shall have no power to add to, subtract from or modify any of the terms of this Trust Agreement.

(g) Any instrument or document required to be executed by the Trustees in connection with the performance of their duties hereunder, may be executed either with or without counterparts thereof by any one Union Trustee and any one Employer Trustee duly authorized by the Trustees to execute such instrument.

Section 3.02. The Trustees shall cause books, records and accounts to be maintained which shall accurately disclose the condition of the Trust and the Trust Fund. These records shall be open to inspection at all reasonable times by a duly authorized representative of the Union, the Contractors' Associations, or of the Employers or others as required by law. As soon as practicable after the close of each fiscal year of the Trust, the Trustees shall cause the Trust Fund to be audited by independent certified public accountants chosen by the Trustees, and shall have available in the office for inspection by any interested parties a written statement of the results of such audit showing the condition of the Trust and the Trust Fund, including all assets, receipts, disbursements and other transactions.

## ARTICLE IV
## TRUST POWERS

Section 4.01. Subject to such limitations as are expressed in this instrument, the Trustees by a majority vote shall have and enjoy all the powers and rights necessary or desirable for the proper administration of the Trust, and with respect to the Trust Fund they shall have all the rights and powers of a person having individual ownership of property, and may buy, sell, mortgage, pledge and convey, and otherwise acquire and dispose of, and contract with respect to, and sue and defend in any court of competent jurisdiction in any proceeding relating to any of the Trust property. They may borrow such funds as from time to time may be necessary and pledge the Trust property, or any part thereof, as security therefor and execute notes or other instruments of such indebtedness, but such indebtedness shall not constitute a personal obligation of the Trustees, the Union, the Contractors' Associations, the Employers, any Journeymen or any Apprentices or any and all of them, but shall be enforceable only against and shall be satisfied only out of the Trust property. No person or corporation dealing with the Trustees shall be required to inquire into the terms of the Trust or to see that they are complied with, and the receipt of the Trustees shall be conclusive evidence of the discharge of the obligation for which such receipts were given.

Section 4.02. Specifically, but not in limitation of the foregoing general grant of powers, the Trustees shall have the powers:

(a) To engage such attorneys, brokers, accountants, consultants, auditors, employees and assistants and other agents as in their judgment may be necessary or advisable in the administration of the Trust, without liability for any act or omission of any such person selected or retained with

reasonable care, and to pay to any such person reasonable compensation as an expense of the Trust.

(b) To interpret and construe the Program and Trust, to decide any dispute arising hereunder and to adopt and construe, from time to time, rules, regulations, and procedures with respect to the administration of the Trust not inconsistent with the provisions of this Trust Agreement, and all such decisions and rules, regulations, and procedures so adopted shall be binding upon the Trustees, the Union, the Contractors' Associations, the Employers, the Apprentices and Journeymen.

(c) To demand, collect, receipt and sue for contributions from Employers and tuition repayments from Apprentices and former Apprentices when and as same shall become due and payable as provided in Section 2.02 hereof;

(d) To deposit Trust Funds in any bank or banks or trust company or companies designated by the Trustees.

(e) To invest and reinvest any surplus funds in bonds, notes, conditional sales contracts, debentures, real estate, stocks and any other security or interests in income-producing property as the Trustees may deem advisable, provided that all investments shall comply with the requirements of Section 404 of ERISA, and to delegate the investment powers granted to them by this Agreement to an investment manager provided such investment manager meets all the requirements set forth in Section 3(38) of ERISA.

(f) To expend and disburse for the general purposes of the Trust and of the Program such portion of the Trust Fund as in the opinion of the majority of the Trustees is not required for a reserve which, in view of all the circumstances, is required to properly protect the Trust Fund and the Trust and Program against destruction or disruption due to unforeseen circumstances.

(g) To acquire, lease, rent, construct, own, and operate such schools or other facilities as they deem necessary or advisable for the purpose of providing instruction and training for apprentices and Journeymen and to establish standards for admission to any school owned and operated by the Trustees and to select the individuals who will be eligible for admission to the apprenticeship training Program or eligible for the Journeymen training Program, provided, however, that the recruitment, selection, employment and training of Apprentices shall be without discrimination because of race, color, religion, national origin, sex, sexual orientation, age (40 or older), genetic information, or disability, ancestry, marital status, parental status, arrest record, military discharge status, source of income, gender identity or housing status; or the actual or perceived association with such a person.

(h) To employ and maintain an administrative staff, JAC Coordinator, faculty and other personnel for any school or training facility operated by the Trustees and to prescribe the courses and curriculum to be taught.

(i) To use part of the Trust assets to promote the apprenticeship and training programs sponsored by the Trust and the JAC and employment within the unionized plumbing industry. Such promotion and marketing shall include, but not be limited to, instructor dinners, apprenticeship awards, and outreach and recruitment activities with the goal of increasing the number of qualified individuals applying for programs sponsored by the Trust or the JAC, promoting the advantages of being an apprentice and journeyman in the unionized plumbing industry, displaying the training facilities of the Trust Fund at the JAC; and the skills taught in programs sponsored by the Trust and the JAC; and to inform and educate the general public of both the training provided by the Trust Fund and the JAC and the benefits and rewards to the public of that training.

(j) Acting as the Joint Apprentice Committee:

1. To adopt and supervise the administration and enforcement of apprenticeship standards;
2. To see that there is provided, insofar as possible, continuous employment to all apprentices as well as all-around diversified training in all the job processes of the craft and to that end to transfer and assign apprentices from one employer to another;
3. To adopt such policies, rules and regulations as are necessary to effectuate the purposes of apprenticeship standards adopted by the Committee;
4. To adopt changes to the apprenticeship standards;

5. To determine all questions of eligibility and of the status and rights of Apprentices and/or Journeymen;
6. To pass upon the qualifications of apprentices and approve or disapprove apprenticeship agreements;
7. To pass upon the training qualifications and approve or disapprove, of Employers who agree to train apprentices in accordance with the apprenticeship standards adopted by the Committee;
8. To evaluate the prior experience and training of apprentices and grant appropriate credit on account of either the training on-the-job or the related and supplemental instruction as it deems appropriate;
9. To have each apprentice sign an individual apprenticeship agreement;
10. To adjust or determine all disputes and complaints having to do with apprentice standards and agreements and with the employment and training of apprentices and to render such decisions and determinations in such disputes as they deem appropriate;
11. To establish, interpret and construe rules, regulations and procedures for the discipline of apprentices and to conduct hearings, and impose sanctions or penalties for the violation of the rules, regulations and procedures as they deem appropriate, including, but not limited to, dismissal from the apprenticeship program; and
12. To establish and maintain all apprentice records required by the apprenticeship standards.

Any activity of the Committee may, by resolution of the Committee, be delegated to a joint subcommittee which shall consist of at least four members, and always with an equal number of Union Trustees and Employer Trustees (including a representative from each Contractor Association unless otherwise agreed to by the Employer Trustees). Any activity may also be delegated, by action or resolution of the Committee to the Apprentice Coordinator or another designated representative of the Committee.

## ARTICLE V
## MISCELLANEOUS

Section 5.01. No Trustee hereunder shall be liable for any act or default of any Co-Trustee or predecessor Trustee. In the exercise of their discretionary powers, the Trustees may act solely upon their own best judgment upon the facts brought to their attention without liability for errors of judgment and with complete immunity from liability for losses, damages or liabilities sustained by the Trust, Union, Contractors' Associations, Employers, Apprentices or Journeymen so long as the Trustees act in good faith and only to the extent such relief is permissible under ERISA. The Trustees may rely upon any representation made to them by the Union, Contractors' Associations, Employers, or by any duly authorized officer or officers thereof, or by any Apprentice, or by any Journeyman, and upon any other information, document, or signature believed by the Trustee to be genuine, and they shall have no responsibility to investigate any fact or facts disclosed by such representation and shall not be liable for acting in reliance thereupon. The Trustees shall be accountable only for funds actually received by the Trust.

The Trustees, Union, Contractor's Associations and Employers, may rely upon all opinions given by legal counsel selected by the Trustees, and the opinion of said counsel shall be

full and complete authority and protection in respect to any action taken, suffered or omitted by the Trustees, in good faith in accordance therewith. Neither the Contractor's Associations nor the Union shall incur any liability of any kind or nature whatsoever, by virtue of the execution of this Trust Agreement or by virtue of their appointment or removal of any Trustee hereunder.

Section 5.02. The WSA, shall indemnify and save harmless from and against any or all liability the Contractor Trustees appointed by the WSA may be subjected to by reason of any act they, or any of them, may take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The PCA shall indemnify and save harmless from and against any or all liability the Contractor Trustees appointed by the PCA may be subjected to by reason of any act they, or any of them, may take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Union indemnifies and saves harmless from and against any or all liability the Union Trustees, or any of them, may be subjected to by reason of any act they, or any of them, take in their official capacity, including indemnity for all expenses reasonably incurred in their defense. The Trustees shall purchase insurance for the Trust and its Trustees to cover liability and otherwise indemnify Trustees in the event of claims against them; such insurance, however, shall not preclude recourse by the Trust in a case of a breach of fiduciary obligations. The aforementioned indemnification provision shall not apply in instances where a Trustee pleads guilty or is convicted of a violation of the law or is found to have breached ERISA by a court of law.

Section 5.03. No Apprentice and/or Journeyman shall have any right, title or interest in or to the Trust Fund or any part thereof. No Apprentice and/or Journeyman shall have any right, title or interest in, or the option to receive any part of, the Employers' contributions. No Apprentice and/or Journeyman shall receive a cash consideration either upon the termination of

/

the Trust, upon his withdrawal from the Program, upon his severance of employment or under any other circumstances.

Section 5.04. The Union, Contractor's Associations and Employers shall advise the Trustees as to all information requested by them for the administration of the Trust including all necessary information relative to the Apprentices and Journeymen. Whenever in the administration of the Trust it shall be necessary or desirable for the Trustees to be informed as to any facts, unless other provision expressly is made herein as to what evidence of such facts the Trustees may accept, the Trustees may conclusively rely on a statement or certificate signed by a duly authorized officer of the Union, Contractor's Associations or Employers with respect thereto.

Section 5.05. At any time or from time to time, when required by the Trustees, each Apprentice and/or Journeyman will file with the Trustees in writing a designation of his Post Office address and Email address, and each change thereof. Such last Post Office address filed with the Trustees or in the case of a Journeyman, if no such address has been filed with the Trustees, then the last Post Office address shown on the records of the Union, shall be binding upon the Apprentice and/or Journeyman for all purposes of the Program, and the Trustees shall not be obligated to otherwise determine the address of any Apprentice or Journeyman. Except as otherwise required by law, resolution of the Trustees, or the Apprenticeship Standards approved by the JAC, any notice to be sent to the Apprentice or Journeyman may be mailed, postage prepaid, to him at the address so designated and mailing of such notice shall be sufficient and conclusive evidence that the Apprentice or Journeyman has received such notice whether or not he actually shall have received the same and shall be conclusive notice to such Apprentice or Journeyman of the subject matter thereof as of the date of mailing.

Section 5.06. Subject only to the power of amendment expressly set forth in Article VII of this Trust Agreement and to the terms and provisions of this Trust Agreement, this Trust is declared to be and shall be irrevocable with respect to all monies paid in and forming a part of the Trust Fund. The Trust shall continue in operation and effect until the Trustees shall have completely distributed all assets entrusted to them in accordance with the provisions of this Trust Agreement for the purpose set forth herein.

Section 5.07. In the event that legislation is enacted by the Congress of the United States or by the legislature of the State of Illinois, or by any local government levying a tax or other exaction upon the Employers for the purpose of establishing a federal, state or locally administered Apprenticeship or Journeymen Program, the Employers shall be credited against the sums payable under Section 2.02 of Article II with the amount of such tax or exaction payable by them for such contributions. It is understood and agreed by and between the parties hereto that if some form of governmental plan is instituted, the provisions of this Trust Agreement and of the Program shall be amended so that the combined benefits to Apprentices and Journeymen under the provisions of the Program and the Federal, State or Local plan shall be equal to, but shall not exceed the benefits payable under the Program or under the Federal, State or Local plan, whichever Program provides for the greatest benefits to the Apprentices or Journeymen.

Section 5.08.

(a) No part of the Trust Funds shall be used or diverted to purposes other than the exclusive benefits of the Apprentice and/or Journeyman as provided herein and for defraying reasonable expenses of administering the Trust and the Program.

(b) The validity and effect of this Trust Agreement and the rights and obligations of all parties affected hereby, shall be construed and determined in accordance with the provisions of ERISA and the laws of the State of Illinois.

(c) Nothing contained herein shall be construed to constitute this as an employment contract between the Contractors' Associations, any Employer, any Apprentice, or any Journeyman.

(d) This Trust Agreement contains all the agreements between the parties with relation to the Trust, and exclusively defines the powers, duties, rights and obligations of all persons with relation thereto.

(e) No legal effect shall be given to Article or Section titles and headings, which are used herein for convenience or reference only.

(f) If any provision of this Trust Agreement shall be held illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining part of the Trust or Program created hereby, but this Trust Agreement shall be construed and enforced as if said illegal and invalid provisions had not been inserted herein.

(g) The Trustees shall have the exclusive right to enforce any and all provisions hereof on behalf of the Apprentices and Journeymen, and in any action or proceeding affecting the Trust, the Union, the Contractors' Associations and the Trustees shall be the only necessary parties, and they and the contributing Employers shall be entitled to notice.

(h) This Trust Agreement may be executed in any number of counterparts each of which shall be deemed an original and all said counterparts shall be construed a one and the same instrument and shall be sufficiently evidenced by any one counterpart, but not more than one counterpart need be signed by any party hereto

(i) Any legal action by an Apprentice, Employer, or journeyman, (or their representatives, agents, heirs, or assigns) to enforce a right under this Trust must be commenced within one year of the date the apprentice, Employer, or journeyman completes the administrative appeal process of this Trust Fund. The situs of the Trust is Cook County, Illinois. Venue shall be in the United States District Court for the Northern District of Illinois. Any claims against the Trustees or their designees involving a matter for which discretionary authority is given by this Trust Agreement shall be determined under the arbitrary and capricious standard of review.

(j) The Trustees shall not receive any compensation for their services as Trustees unless otherwise permitted by ERISA, but shall be reimbursed, from the Trust Fund, for reasonable out-of-pocket expenses incurred in connection with their duties as Trustees.

Section 5.09. For the purposes of ERISA, the Trustees are hereby designated as the administrator and named fiduciary of the Trust and Program herein set forth.

## ARTICLE VI
## TRUSTEES & TRUSTEES' SUCCESSORS

Section 6.01. Each Trustee shall serve as Trustee until his death, resignation, removal or inability to act.

Section 6.02. Five (5) of the Trustees shall be known as the "Union Trustees", and five (5) shall be known as the "Employer Trustees", and shall be appointed pursuant to the provisions of Article III, Section 3.01 hereof. Each successor Trustee shall have the same classification as that held by the Trustee whom he has replaced.

Section 6.03. Any Trustee may resign by tendering his written resignation to the applicable Association or Union, and the remaining Trustees.

Section 6.04. The Union, at any time, may remove any Union Trustees by serving written notice of such removal upon the remaining Trustees. The PCA, at any time, may remove any PCA Trustee by serving written notice of removal upon the remaining Trustees. The WSA, at any time, may remove a WSA Trustee by serving written notice of removal upon the remaining Trustees.

Section 6.05. In the event any Trustee fails to attend three (3) consecutive meetings of the Trustees, the remaining Trustees may, in their discretion, declare said Trustee unable to act as Trustee and thereupon a vacancy shall be created because of said Trustee's inability to act. The Trustees shall promptly notify the proper person of such vacancy so that a successor Trustee can be appointed as hereinafter provided.

Section 6.06. In the event of the death, resignation, removal or inability to act of the Union Trustee, the Business Manager of the Union shall appoint a successor Union Trustee to fill the vacancy that has been created. In the event of the death, resignation, removal, or inability to act of a PCA Trustee, the President of the PCA may appoint a Successor Trustee to fill the vacancy that has been created. In the event of the death, resignation, removal, or inability to act of a WSA Trustee, the President of the WSA may appoint a Successor Trustee to fill the vacancy

that has been created. In each of the aforesaid cases, the Trustees shall be notified in writing of the appointment of a successor Trustee.

Section 6.07. Each successor Trustee appointed as hereinabove provided shall upon acceptance in writing by such successor Trustee of the terms of this Trust Agreement, be vested with all the rights, powers, duties and discretions and records of the Trust of his predecessor. No vacancy in the office of one Union Trustee or of one Employee Trustee shall impair the power of the remaining Union or Employer Trustees, as the case may be, to administer the affairs of the Trust; all as hereinabove provided.

## ARTICLE VII
## AMENDMENT AND TERMINATION

Section 7.01. This Trust Agreement and the Trust embodied herein shall not be amended, altered or suspended, except by a majority vote of the Trustees, and then only upon five days prior notice in writing to each of the Trustees of the proposed change.

Section 7.02. The Trust hereby created shall continue until all the assets of the Trust Fund shall have been applied or disbursed by the Trustees for the purposes of the Trust and the Program, and until such assets have been expended or disbursed, the Trustees shall continue to have and exercise all the powers, rights, duties and discretions given to or imposed upon them by this Trust Agreement. When all the assets of the Trust Fund have been so expended or disbursed, the Trust and the Program shall be deemed terminated.

Section 7.03. This Trust Agreement shall be binding upon and inure to the benefit of the Union, the Contractor's Associations, the Employers, the Apprentices and journeymen and the respective successors and assigns of any of them.

## ARTICLE VIII
## MERGER, CONSOLIDATION OR COMBINATION

Section 8.01. The Trustees shall have the power and are authorized to cause the Trust Fund to be merged, consolidated with or combined with or into one or more multi-employer funds with purposes similar to that of the Trust Fund.

IN WITNESS WHEREOF, the undersigned have executed this document amending and restating the TRUST FUND FOR APPRENTICE AND JOURNEYMAN EDUCATION AND TRAINING, LOCAL 130, U.A.

| UNION TRUSTEES: | EMPLOYER TRUSTEES: |
|---|---|
| James F. Coyne | [signature] |
| Patrick M. [signature] | [signature] |
| Thomas E. [signature] | Matthew [signature] |
| [signature] | [signature] |
| [signature] | Timothy [signature] |

4826-8328-6086, v. 5